RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0147p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AHMED ABDULLAH ALLABANI,

*Petitioner,*

*v.*

ALBERTO GONZALES,

*Respondent.*

Nos. 03-3248/3984

Appeal from the Immigration & Naturalization Service.
No. A73 123 659.

Argued: November 4, 2004

Decided and Filed: March 28, 2005

Before: MARTIN and BATCHELDER, Circuit Judges; O'MEARA, District Judge.[*]

---

## COUNSEL

**ARGUED:** Maria Baldini-Potermin, SCOTT D. POLLOCK & ASSOCIATES, INC., Chicago, Illinois, for Petitioner. Michele Y.F. Sarko, U.S. DEPARTMENT OF JUSTICE, OFFICE OF LITIGATION, Washington, D.C., for Respondent. **ON BRIEF:** Maria Baldini-Potermin, SCOTT D. POLLOCK & ASSOCIATES, INC., Chicago, Illinois, for Petitioner. Christopher C. Fuller, Janice K. Redfern, U.S. DEPARTMENT OF JUSTICE, OFFICE OF LITIGATION, Washington, D.C., for Respondent.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Ahmed Abdullah Allabani appeals the order of the Board of Immigration Appeals denying his application for asylum and withholding of deportation. He also seeks review of the order of the Board denying his Motion to Reopen Deportation Proceedings. For the reasons discussed below, we affirm the orders of the Board.

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

I.

Allabani is a native and citizen of northern Yemen. He worked as a secretary for Yemen Airlines in 1979 and later was promoted to head secretary and then head of the employee benefits department. He was a member of an airlines union, which advocated for workers' rights in opposition to the government. Allabani was elected general secretary of the union and served from 1988, the year that he graduated from university, to 1992. After his term expired, he returned to work for the airlines and was put in charge of the insurance and retirement plan.

After the northern and southern regions of Yemen were reunited in 1990, Allabani allegedly served as the secretary of the Yemenite Forgiveness Group, a political organization advocating peace and equal rights for citizens of northern Yemen. In that role, he says that he participated in conferences and street demonstrations. He also asserts that he was a founding member and leader of the Charitable Society of the Sons of Al-Bayda, a group, he claims, that organized political rallies and held meetings about community needs and development. As of October 1997, the United States State Department had "no information" on these organizations.

Allabani allegedly was arrested and tortured three times by the Yemeni government. Allabani's brief on appeal provides:

On October 13, 1991, police officers arrested him and took him to the police station in Al-Bayda where he was held until his release on November 3, 1991. He was interrogated by a special officer about his involvement in organizing the rally and whether the rally was linked to an opposition group or foreign government. He admitted his involvement with organizing the rally, informed the officer about his beliefs of freedom and equality for the Yemeni people, and denied any involvement with opposition groups and foreign governments. In response, the officer punched him in the face and beat him with a rubber whip, another officer punched and hit him, and a soldier hit him repeatedly with the back of his gun. The interrogation, whipping, and beating continued for about seven hours. The officers warned him to stop his activities or they would kill him. He refused to sign the document that they wanted. He was beaten daily until his release.

His second arrest occurred in 1992, two days after he participated in a conference in Nazia. Mr. Allabani was arrested by four officers of the political security department at his home, taken to a police station, and then transferred to the political security section where he was beaten and had cold water poured on his head. He was held for four weeks, forced to stay in the sun for long hours, interrogated, and accused of receiving funds from the president of southern Yemen and Saudi Arabia, opposing the government, and attempting to agitate the people. He refused to sign documents as request by officials. He was not taken before a court. After being released, he went to see a doctor for treatment for extensive facial bruises and redness on his back.

His third arrest occurred in April 1994, after he helped organize and participated in a large demonstration to protest the [anticipated] civil war. Mr. Allabani was held in prison in Sanaa for five weeks. During his detention, he was interrogated, physically abused, and threatened.

In the spring of 1994, southern Yemen declared itself autonomous, initiating a civil war. Allabani and others met with southern Yemen's president to urge peace and to try to "have him pressure the government officials in the north to give him and his people their rights." Allabani states that after this meeting, "security forces shot at his car and then called him later, threatening him that he would not make it out alive the next time. His driver was injured from the shots and taken to the hospital."

After the shooting incident, Allabani says that he asked his friend, the president of Yemen Airlines, to arrange a visa for him. He went into hiding until October 17, 1994, when he entered the United States

as a visitor; his visa entitled him to stay until January 16, 1995. Allabani says that his wife and children remain in Yemen. He says that when he first left the country, his family had "problems, but now, it's not as bad, but they are not comfortable." He claims that he will be killed if he returns because he is "democratic" and "effective" with people.

As an airlines employee, Allabani traveled outside Yemen many times to places such as Egypt, Britain, Turkey, and Germany. He did not request asylum in those countries. He testified that he wanted to remain in Yemen, but was forced to leave by the alleged shooting incident.

On November 14, 1994, he applied for asylum with the Immigration and Naturalization Service. At the asylum hearing, the Immigration Judge was presented with Allabani's asylum application, Allabani's testimony, a State Department advisory opinion for Yemen, and the country report. In his application, Allabani stated that he sought asylum on the grounds of his membership in political organizations and his political opinions. He claimed that he would be imprisoned or assassinated if he returned to Yemen.

The Immigration Judge denied his application for asylum and withholding of deportation on December 22, 1997, but granted Allabani a period of voluntary departure. The judge specifically noted that Allabani failed to submit documentation to support his application. The judge found no evidence to support the existence of the government-opposed organizations in which Allabani claimed membership. The judge also found that, even assuming as true Allabani's testimony regarding his membership in those organizations, Allabani failed to provide any evidence to corroborate the alleged purpose of the organizations and their significance in Yemen politics.

With regard to Allabani's claims of past persecution, the judge concluded that, even assuming that Allabani had been detained and beaten on account of his political activities, "it was unlikely that the beating he received was of any severity." The judge also stated that, given the civil war at the time, it was likely not uncommon to be at risk of a stray bullet.

With regard to whether Allabani had a well-founded fear of future persecution, the judge emphasized that the current Yemeni government is different from the one that existed when Allabani claims he was persecuted. The judge stated that the conclusion of the Yemeni civil war and resulting reunification negated any fear of future harm. The judge found that Allabani offered evidence of general human rights violations in Yemen, but that he offered no evidence to show that the abuses he allegedly suffered resulted from his political opinions or unification advocacy. Also, the judge explicitly doubted Allabani's veracity, questioning how one alleging persecution could nevertheless gain employment at the government-owned airlines and obtain authority to travel out of Yemen.

On January 21, 1998, Richard Kulics, Allabani's attorney, appealed the judge's decision to the Board of Immigration Appeals. In the standard appeal form, Kulics argued that the court interpreter's translations prevented Allabani from adequately describing the full extent of his problems in Yemen. Kulics indicated that he would file a separate written brief in support of the appeal.

On July 2, 1998, the Board ordered Kulics to submit a brief in support of Allabani's appeal. On July 10, 1998, the Immigration and Naturalization Service filed a Motion for Summary Dismissal requesting that the Board dismiss Allabani's appeal for lack of an appeal brief. Despite these developments, Kulics never filed a brief in support of Allabani's appeal.

On January 16, 2003, the Board of Immigration Appeals affirmed the Immigration Judge's decision based on the reasons contained in the judge's decision. The Board also stated that Allabani failed to file an appeal brief, failed to demonstrate errors in the translation, and failed to object to the translation during the hearing. On February 14, 2003, Allabani filed a Petition for Review with this Court.

On April 14, 2003, through new counsel, Allabani filed with the Board a Motion to Reopen based on ineffective assistance of counsel and a Motion to Reopen under the United Nations Convention against

Torture.  With these motions, Allabani submitted  documentation that supported the allegations recited above.

On June 23, 2003, the Board denied Allabani's Motion to Reopen, finding that Kulics's representation did not constitute ineffective assistance of counsel because Allabani had not convinced the Board that he was "entitled to an immediate grant of asylum."  Allabani now seeks review of the deportation proceedings and decisions below.

II.

1.    Asylum Eligibility

Our review of administrative asylum and withholding of removal eligibility determinations is limited to a deferential standard.  We will reverse only if the evidence presented by Allabani was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.  *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).

The Attorney General may grant asylum to any person who qualifies as a "refugee."  8 U.S.C. § 1158(b).  A refugee is a person unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  To prove one's refugee status, one must present specific facts demonstrating suffering of past persecution or a well-founded fear of future persecution motivated by one of these five statutorily protected grounds.  *See Elias-Zacarias*, 502 U.S. at 481.  The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a).  To prove a well-founded fear of future persecution, an applicant must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an "objective situation" under which his fear can be deemed reasonable.  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440-41 (1987).  The applicant is not required to "show that he probably will be persecuted if he is deported; '[o]ne can certainly have a well-founded fear of an event happening when there is less than a [fifty per cent] chance of the occurrence taking place.'"  *Perkovics v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) (quoting *Cardoza-Fonseca*, 480 U.S. at 431).

Here, the Immigration Judge found that Allabani failed to prove either past persecution or a well-founded fear of future persecution.  Still, Allabani contends that he satisfied this burden by relaying his stories of arrests, detainment, and torture on account of his political opinion and his association with political organizations.  The Immigration Judge disagreed, finding his testimony lacking in credibility, and denied his application in the absence of corroborating evidence.

With regard to past persecution, the Immigration Judge correctly found that Allabani failed to submit any evidence to show that he was arrested, detained, and tortured on account of his political opinion and affiliation with political organizations.  Indeed, Allabani submitted no evidence to prove the existence of, or his membership in, the political organizations in which he claims membership.  Such evidence is critical, *see* 8 U.S.C. § 1101(a)(42)(A), and without it, the Immigration Judge ruled properly.

For the same reason, the Immigration Judge also properly concluded that Allabani's alleged fear of future persecution was unfounded.  Even assuming Allabani's membership in organizations that advocated for unification and equal rights, Allabani fails to show how such membership would make him susceptible to persecution now.  Yemen has achieved peace following the end of the civil war in 1994, and citizens of both northern and southern Yemen are benefitting from the country's reunification.  The goals—peace and unification—of Allabani's alleged unification campaigns and peace rallies have been met.  The country is now developing even greater bonds between north and south; Allabani's interests would seemingly be welcomed, rather than punished, in Yemen.  For these reasons, his alleged fear of future persecution lacks credibility.  Thus, we affirm the order denying his application for asylum.

2.       Withholding of Deportation

Because the record supports the determination that Allabani failed to meet the statutory eligibility requirements for asylum, the record necessarily supports the finding that Allabani did not meet the more stringent standard of a clear probability of persecution required for withholding of deportation.  *See Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (citing *Cardoza-Fonseca*, 480 U.S. at 431-32)).

3.       Motion to Reopen

a.       Convention Against Torture

Allabani next argues that the Board erred in denying his motion to reopen pursuant to the Convention Against Torture by not considering the full record, which included evidence that was not presented to the Immigration Judge.  On appeal to the Board, Allabani provided photographs and documentation to support his purported membership in political organizations, his political advocacy, his arrests, and the 1994 assassination attempts.  Allabani also provided expert testimony regarding the alleged translation errors in the proceeding below.  He showed that these errors included omissions of Allabani's statements and testimony.  For example, the translator interpreted Allabani's statement, "we put demands to the president," as "we talked to the president."  Allabani asserts that the Board did not provide a reasoned explanation as to why the evidence that he submitted on appeal precluded a finding of past persecution and a well-founded fear of future persecution in Yemen.

In a given case the Board of Immigration Appeals may determine, as a sufficient ground for denying a motion to reopen, whether the alien has produced previously unavailable, material evidence.  *INS v. Abudu*, 485 U.S. 94, 107-08 (1988).  "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. § 1003.2(c)(1).  These decisions are subject to an abuse-of-discretion standard of review, *Abudu,* 485 U.S. at 107-08, and "[i]n determining whether the Board abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group," *Balani*, 669 F.2d at 1161.

The evidence that Allabani submitted to the Board was available at his former hearing.  But for the mistake of counsel, these documents would have been considered (although, as discussed below, such consideration would not have changed the outcome of Allabani's case).  Also, the Board gave this rational explanation:

> [W]e have reviewed the record, and note that the Board and the Immigration Judge concluded that the respondent was not the victim of past persecution in Yemen.  Nothing in the instant motion alters our conclusion on that point.  We further are unable to find that if the proceedings were reopened, the respondent would likely establish eligibility for asylum and withholding of removal based upon the evidence submitted with the motion. . . .  We therefore see no need to reopen these proceedings.

Because the material was available and the Board provided a reasoned explanation, we conclude that the Board did not abuse its discretion in denying the motion.

b.       Ineffective Assistance of Counsel

In his motion to reopen, Allabani also claimed that his former counsel, Richard Kulics, was ineffective on several grounds.  He argues that Kulics (1) failed to submit documentation at the deportation hearing in support of the asylum and withholding applications; (2) failed to object during Allabani's deportation hearing to the allegedly inaccurate translation; (3) failed to raise material legal issues in his

notice of appeal or to file an appeal brief; and (4) failed to file a motion to reopen Allabani's deportation proceedings to apply for protection under the Convention Against Torture.

Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing. *See Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). To constitute fundamental unfairness, however, a defect in the removal proceedings "must have been such as might have led to denial of justice." *Id.* (quoting *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir. 1977)). The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process. *Huiocochea-Gomez,* 237 F.3d at 699. Generally, we review the Board's denial of a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 321-22 (1994). However, where there is a claim of ineffective assistance of counsel, we review this question of law de novo. *Id*.; *see also Gjonaj v. INS*, 47 F.3d 824, 826 (6th Cir. 1995).

Here, the Board found that, even considering evidence that was not presented to the Immigration Judge, Allabani failed to establish prima facie eligibility for relief. Thus, according to the Board, Allabani did not demonstrate that counsel's failure to present the evidence prejudiced his case. Still, Allabani claims on appeal to this Court that the result would have been different had his attorney submitted the evidence at hand. This evidence purportedly includes:

1.     A 1992 photograph of Allabani speaking at a political rally for the Charitable Society for the Sons of Al-Bayda.

2.     A 1990 photograph of Allabani meeting with Haider Al-Das, former President of the People's Democratic Republic of Yemen and former Prime Minister of Yemen.

3.     A letter from the President of the General Confederation of Workers Trade Unions to the President of the Supreme Judicial League, appointing Allabani as the primary representative to the League.

4.     A letter from the President of the General Union requesting Allabani's assistance.

5.     A November 15, 1991, letter from the General Director of the Ministry of the Interior, Prison Department, to the General Director of Yemen Airlines that evidences that Allabani was in custody from October 13, 1991, until November 3, 1991, and that the government did not object to his return to employment.

6.     A letter from Dr. Ibrahim Al-Khazan of the Dr. Al-Khazan Hospital, evidencing that Mr. Allabani was admitted for treatment for facial bruises and extensive redness on his back.

7.     A letter from Dr. Sami Mohamad Fouad of the Al Qudss Clinic, evidencing that Allabani's cousin was treated for gunshot wounds on June 30, 1994.

8.     An obituary regarding Ali Muhamed Ahmed Al-Musaadi Al-Awadi, member of Parliament, who died in a car accident on October 16, 1995.

Allabani says that he gave these documents to Kulics to submit to the Immigration Judge. Allabani says that he asked Kulics if he could provide anything else, and Kulics told him that nothing else was needed. Allabani contends that he relied on the advice of Kulics, and believed that these documents were submitted. It is apparent from the transcript that these documents were not submitted to the judge:

Mr. Kulis [sic] to Respondent:
Q.     The second time you were in prison, in June of 1992, what happened that time?

A.    After the conference, they took me to prison, like I said earlier, they beat me with a rubber band and cold water.  And, after I left the prison, I went to the doctor, and here is my medical report.

Judge to Mr. Kulis [sic]:
Q.    Mr. Kulis, why am I getting all these things now?
A.    I don't know, I thought I submitted some documents, I don't know.
Q.    The photographs, and everything else.

Mr. Kulis [sic] to Respondent:
Q.    Just keep those materials there.

Kulics did not offer the medical reports, photographs, or other documentation, described above, during the hearing.  Allabani argues that these documents would have established Allabani's eligibility for asylum and withholding of deportation.

Also, Allabani argues that Kulics should have paid more attention to his case.  If he had, Allabani argues, Kulics would have been aware of and submitted a March 1997, fifty-page report by Amnesty International, "Ratification without Implementation: The State of Human Rights in Yemen."  The report shows that the Yemeni government continued to arrest, detain, and torture political opponents and suspected political opponents during and after the civil war.  Allabani contends that the report corroborates his claims of past persecution and fear of future persecution with respect to his arrests, detention, torture, and attempted assassination.  Allabani asserts that "Kulics's failure to do even the minimal investigation and preparation for submission of documents for an asylum and withholding of deportation claim clearly constitutes ineffective assistance of counsel where such documentation is normally required for the claim."

Allabani contends that Kulics further undermined his case by failing to file any supportive documentation or brief on appeal.  Kulics failed to file an appeal brief even after the Board ordered the filing and the Immigration and Naturalization Service filed a motion for summary dismissal for failure to file an appeal brief.

The Board found that Kulics was clearly ineffective; however, because Allabani still failed to establish prima facie eligibility, Kulics' performance, therefore, could not be considered prejudicial.  Effective assistance would not have gained a different result.   The Board stated:

We do not dispute the respondent's contention that his former counsel could have taken greater care and diligence in the preparation and presentation of his case before the IJ and the Board.  However, we have reviewed the record, and note that the Board and IJ concluded that the respondent was not the victim of past persecution in Yemen.  Nothing in the instant motion alters our conclusion on that point.  We further are unable to find that if the proceedings were reopened, the respondent would likely establish eligibility for asylum and withholding of removal based on the evidence submitted with the motion.  Since we are unable to find that the respondent is prima facie eligible for a grant of asylum or withholding of removal under either section 241(b) of the Act or the Torture Convention, we cannot conclude that the respondent suffered prejudice by the representation of his former attorney.  We therefore see no need to reopen these proceedings.

Indeed, none of the new evidence submitted to the Board would have changed the outcome of Allabani's hearing because it does not show that he was arrested, detained, and tortured on account of his political opinion and affiliation with political organizations.  Also, none of the evidence proves the existence of, or Allabani's membership in, the political organizations in which he claims membership.  Because Allabani fails to prove prima facie eligibility with the new evidence, we cannot reverse the Board's denial of his motion to reopen.

III.

For the foregoing reasons, we affirm the orders of the Board of Immigration Appeals.