NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 07a0818n.06
Filed: November 27, 2007

No. 06-3968

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHUI LIN,

        Plaintiff-Petitioner,

v.

        ON PETITION FOR REVIEW FROM
        THE BOARD OF IMMIGRATION
        APPEALS

ALBERTO R. GONZALES,
United States Attorney General

        Defendant-Respondent.
_____/

BEFORE:     MERRITT and CLAY, Circuit Judges, and COX, District Judge.[*]

**COX, Sean F., District Judge.** This matter is before the Court on a Petition for Review

from the Board of Immigration Appeals. Petitioner argues that the Board of Immigration Appeals

("BIA") erred when it denied his request for reconsideration of its affirmance of the Immigration

Judge's ("IJ") decision denying asylum or withholding of removal. The BIA found Petitioner's

proffered "new evidence," a study questioning the accuracy of statements taken during credible fear

interviews, was not material because Petitioner did not establish that it related to his case. This

Court agrees with the decision of the BIA, therefore, we **DENY** the Petition for Review from the

_____

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

Board of Immigration Appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

This action arises out of Petitioner, Chui Lin's application for asylum and withholding of removal. In this action, Petitioner seeks review of the order of the BIA denying his motion to reopen/reconsider the BIA's prior ruling affirming the decision of the IJ. The IJ denied Petitioner's application for asylum and withholding of removal.

Petitioner is a citizen of the People's Republic of China. Petitioner arrived in the United States on January 31, 2002. He was interviewed by agents of the Immigration and Naturalization Service[1] ("INS") both upon his arrival at Los Angeles International Airport; and on February 12, 2002, pursuant to a Notice to Appear issued by the INS. During these interviews, termed credible fear interviews, Petitioner told authorities that in January 2001, he lived with his twenty year old girlfriend in China. He told authorities he could not marry his girlfriend at that time because in China, a woman must be twenty-two years old to get married. Nonetheless, Petitioner claims that his girlfriend became pregnant. Petitioner alleged that if he were returned to China, he would be arrested because he did not have approval to get married and for violating the one-child policy.

On February 14, 2002, the INS served Petitioner with a Notice to Appear charging Petitioner with removability from the United States. Petitioner appeared for a hearing before IJ Terry Bain. He conceded the allegations, including removability. However, Petitioner sought relief from removal, seeking asylum; withholding of removal; and protection under the Convention Against

---

[1]As of March 1, 2003, the Department of Homeland Security's Bureau of Immigration and Customs Enforcement and Bureau of Citizenship and Immigration Services replaced the Immigration and Naturalization Service.

Torture. Petitioner testified at the hearing that he was engaged to his girlfriend, Xiu Fang Shao[2] ("Shao"), and that in 2001 they lived with his parents in China. According to Petitioner, on February 23, 2001, his girlfriend felt ill so he took her to the hospital, where they discovered she was pregnant. The next day, Petitioner claims the Family Planning Committee ("FPC") came to arrest Shao because "she was pregnant and was not old enough to have a child and then we didn't marry." Petitioner and Shao were not home when the FPC came. During his testimony, Petitioner claimed Shao was only nineteen, and had to be twenty years old to marry.

Allegedly, after the arrival of the FPC, Petitioner's parents contacted him and told him to hide. He and Shao went to live with Petitioner's uncle in Fuzhou. Petitioner claims they stayed four days. On the fourth day, the FPC arrived and took Shao to the hospital to have an abortion. Petitioner accompanied Shao to the hospital. Petitioner claims that on March 3, 2001, he and Shao were fined 18,000 yuan for violating the family planning policy. According to Petitioner, authorities threatened his parents with jail if Petitioner refused to pay. After being informed of the fine, Petitioner claimed he and Shao went to stay with friends that lived four or five hours away. At some point, Shao returned to her parents, where she now resides. Petitioner fled to the United States. Petitioner claims he fears that if he is returned to China, he will be beaten and sentenced for violating the family planning policy and for illegally exiting China.

On September 15, 2004, the IJ issued her decision. She found that Petitioner's claims were not credible based on inconsistencies between Petitioner's credible fear interviews and his testimony at the hearing. Judge Bain cited Petitioner's failure to tell authorities of the abortion during initial interviews. She also cited the discrepancies in the age of his girlfriend given during interviews and

---

[2]Respondent refers to her as "Shao Sui Sang" or "Sang."

during his testimony. Judge Bain also found that Petitioner's story did not "make sense." She believed it did not make sense that Petitioner would take his girlfriend to the hospital because they would have suspected she was pregnant. Further, Judge Bain took issue with Petitioner's allegation that the hospital allowed Shao to leave rather than requiring the abortion to be performed immediately. Judge Bain also did not believe that Petitioner and Shao would return home after finding out she was pregnant in light of the FPC's policies.

Judge Bain also held that even if Petitioner's story was credible, he failed to establish that he was a refugee within the meaning of United States asylum laws because he was not married to Shao.

Judge Bain ruled that Petitioner failed to establish a well-founded fear of persecution if returned to China, and failed to establish eligibility for withholding of removal. The court ordered: (1) Petitioner's application for asylum was denied; (2) Petitioner's application for withholding of removal was denied; and (3) relief pursuant to Article 3 of the Convention Against Torture was denied. Petitioner was ordered to be removed to China.

Petitioner filed an appeal from the IJ's decision with the BIA on September 21, 2005. On February 16, 2006, the BIA affirmed the IJ's decision without opinion. Petitioner did not file a petition for review of that decision.

On May 5, 2006, Petitioner filed a Motion for Reopening/Reconsideration with the BIA. Petitioner sought to reopen the BIA's February 16, 2006 order affirming the IJ's decision. Petitioner argued his motion should be granted on the basis of new and previously unavailable evidence. He relies on a February 2005 study entitled "Study of Asylum Seekers in Expedited Removal As Authorized by Section 605 of the International Religious Freedom Act of 1998; Evaluation of

4

Credible Fear Referral in Expedited Removal at Ports of Entry in the United States" ("study"). According to Petitioner, the study shows "wide discrepancies from required procedures that cast grave doubt on the accuracy of assessment memos, even under the more stringent post-IIRIRA criteria." Essentially, the study found that details offered by aliens during credible fear interviews were not always accurately recorded, were not sufficiently elaborated on, or were not confirmed by the aliens despite use in subsequent asylum proceedings. The concern is that the statements may be presented during Secondary Inspection interviews as a means to impeach an alien's testimony, when in actuality, the statements are erroneous. Petitioner argued that the study should be considered as new evidence because it was published in February 2005, well after the IJ's September 2004 decision. Petitioner claims he was only able to obtain a copy of the study after the BIA's February 2006 decision. Further, Petitioner also requested reconsideration of the BIA's decision based on a number of cases held in abeyance by the BIA addressing similar legal issues.

On June 13, 2006, the BIA issued an order denying Petitioner's motion. The BIA found that with respect to the study, it was "not material to the specific facts of the respondent's case and thus cannot be considered material evidence." Additionally, with respect to Petitioner's argument that his appeal should have been decided in conjunction with several cases being held in abeyance, the motion was one for reconsideration - and was thus untimely.

Petitioner subsequently filed the instant Petition, seeking review of the BIA's June 13, 2006 Order denying Petitioner's motion for reopening/reconsideration.

## II.    STANDARD OF REVIEW

"In a given case the Board of Immigration Appeals may determine, as a sufficient ground for denying a motion to reopen, whether the alien has produced previously unavailable, material

5

evidence." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)(citing *INS v. Abudu*, 485 U.S. 94, 107-108 (1988)). "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Id*. (citing 8 C.F.R. § 1003.2(c)(1). "These decisions are subject to an abuse of discretion standard of review, and in determining whether the Board abused its discretion, this Court must decide whether the denial of the motion to reopen...was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id*. (citations omitted).

### III.    ANALYSIS

**A.    The BIA Did Not Abuse Its Discretion When It Denied Petitioner's Motion to Reopen**

Petitioner argues the BIA abused its discretion by failing to consider relevant circumstances regarding the study submitted with Petitioner's motion to reopen. Petitioner's argument is without merit. The BIA considered the study enough to realize that the study did not pertain to the specific facts of Petitioner's case. In other words, while the study may have found that *some alien's* statements taken during credible fear interviews are erroneously recorded and unreliable as used in subsequent Secondary Inspection, nothing in the study indicated that *Petitioner's* statements were erroneously recorded or unreliable. Petitioner does not offer evidence that his own statements during his credible fear interviews were inaccurately recorded or are otherwise not credible. Rather, he argues that based on the study, credible fear interview statements in general should be deemed unreliable.

6

Petitioner's reliance on a single study that found some credible fear statements were unreliable, is insufficient - particularly in light of the lack of evidence that his specific credible fear statements are unreliable - to meet Petitioner's "heavy burden" to reopen proceedings. See *Abudu*, 485 U.S. at 110. Accordingly, the BIA did not abuse its discretion.

**B.     The BIA Did Not Apply an Erroneous Standard to Petitioner's Motion to Reopen**

Petitioner argues that the BIA erred as a matter of law because it applied an erroneous standard to his motion to reopen proceedings. According to Petitioner, the BIA erred because it required the newly submitted evidence to relate to the "specific facts" of Petitioner's case, rather than merely requiring that the evidence be material to Petitioner's claim in general. Petitioner cites 8 C.F.R. § 1003.2(c)(1):

> A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.

Petitioner's argument is unavailing. The BIA correctly applied the regulation and found that the evidence submitted by Petitioner, i.e. the study, was not "considered material evidence." [J.A. 7]. The BIA found that it was not material because it did not relate to the specific facts of Petitioner's case. As discussed above, this finding was not an abuse of discretion. There is nothing that connects the results of the study to Petitioner's situation such that the study has any bearing on the reliability of Petitioner's credible fear interview statements. Accordingly, the BIA did not err

7

as a matter of law.[3]

Moreover, Petitioner ignores the IJ's finding that even if his testimony were credible - he would still not be considered a refugee under 8 U.S.C. § 1101(42). [J.A.17-18]. This finding cannot be challenged because Petitioner failed to timely seek reconsideration. See 8 C.F.R. § 1003.2(b)(2).

## IV.  CONCLUSION

For the foregoing reasons, we **DENY** the Petition for Review from the Board of Immigration Appeals.

---

[3]The cases cited by Petitioner are inapplicable in this case. In *Shou Yung Guo v. Gonzales*, 463 F.3d 109 (6th Cir. 2004), the court found the BIA abused its discretion by failing to consider documents that indicated foreign-born children would be counted in determining violations of China's one-child policy. However, unlike Petitioner's case, the documents related to Shou Yung Guo's specific case because she had more than one child, at least one of whom was foreign born, in violation of China's one-child policy. Here, Petitioner has failed to demonstrate the relevance of the study to his specific situation.