**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0142n.06

**No. 09-3291**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Mar 05, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| BOLANLE YUSUFF ODUBANJO, | ) | |
| | ) | |
| Petitioner, | ) | ON APPEAL FROM THE |
| | ) | BUREAU OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | **O P I N I O N** |
| Respondent. | ) | |
| | ) | |

**BEFORE: CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.**[*]

**McKEAGUE, Circuit Judge.** Bolanle Yusuff Odubanjo, a native and citizen of Nigeria, converted from Islam to Christianity after entering the United States illegally in 1993. In 2007, an Immigration Judge ("IJ") denied Odubanjo's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and in 2009 the Bureau of Immigration Appeals ("BIA") affirmed without opinion. Because the IJ's decision was supported by substantial evidence, we **DENY** the petition for review.

**I.**

In 1993, at the age of twenty, Odubanjo left Nigeria and, using a fake passport, entered the United States, where she has resided since. She filed an application for asylum on March 1, 1994.[1]

_____

[*]Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]It is not clear what happened to this 1994 application. Odubanjo later testified that she had not signed the application, and that not all of the information recorded in the application was correct.

On May 5, 2005, the Department of Homeland Security served Odubanjo with a Notice to Appear, charging her with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without being admitted or paroled. Odubanjo conceded removability, renewed her application for asylum, and applied for withholding of removal and protection under the CAT. The IJ held a merits hearing on September 27, 2007, at which time Odubanjo, who was raised in a Muslim family but converted to Christianity after coming to the United States, argued that, as a Muslim convert to Christianity, she had a well-founded fear that she would face threats from both Muslims and Christians should she return to Nigeria.

Odubanjo testified that she converted and began attending church in 1994, and became more serious about attendance at church after she moved to Columbus, Ohio in 2000. At the time of the hearing, she attended Overcomers Christian Ministries in Columbus, where she volunteered as an usher. Odubanjo testified that in Nigeria her family had problems with conflicts between Muslims and Christians and that – while she herself had not had any problems, and nothing ever happened to her – she had witnessed her father, a Muslim, engaged in physical and verbal confrontations with Christians. She also testified that her young brother was kidnapped before she left Nigeria, and that – while "[n]obody really ever found out who did it or what happened" – her father told her that her brother was taken away by a Christian group. (JA 138, 158.) When asked whether she could safely move to the southern part of Nigeria, where there is a Christian majority, Odubanjo replied that she could not, "[b]ecause I don't know anybody over there." (JA 145.)

The IJ issued his decision at the end of the hearing on September 27, 2007. While he found Odubanjo generally credible, he concluded that she had not established an objectively reasonable

basis to fear returning to Nigeria on account of her religion, and thus had not met the burden required to prevail in her petition for asylum. Instead, he found that Odubanjo's "primary reason for not wishing to return to Nigeria appears to be that she has lived in the United States for a long time and would have difficult [sic] readjusting to life there." (JA 71.)

In explaining how he had reached his decision, the IJ discussed both the 2006 State Department Nigeria Report on Human Rights Practices ("Country Reports") and the 2006 State Department International Religious Freedom Report ("Freedom Report"). While conceding that the reports indicated that there were tensions between Christians and Muslims in some areas, the IJ observed that Nigerian citizens are generally able to worship freely, that tens of millions of Christians live in Nigeria without being persecuted, and that Christianity is the predominant religion in some states. The IJ addressed Odubanjo's fears that she would face special danger as a convert from Islam to Christianity by finding it highly unlikely that anyone in Nigeria would discover that Odubanjo had converted, especially as Odubanjo had left seventeen years earlier and had not maintained ties with anyone in Nigeria. The IJ also found that Odubanjo could reduce any chance of persecution by relocating to a predominantly Christian area in the south of Nigeria. "While she does not want to do this," the IJ noted, "she provided no reasonable explanation as to why she can not relocate within Nigeria." (JA 73.)

Having denied Odubanjo's application for asylum, the IJ similarly denied Odubanjo's application for withholding of removal, concluding that petitioners for withholding of removal must meet a higher burden than must asylum petitioners. Finding that Odubanjo had not shown that there was a probability that she would be harmed in Nigeria for any reason, or that such harm would rise

to the level of torture, the IJ also denied Odubanjo's application for protection under the CAT.

Nonetheless, the IJ granted Odubanjo voluntary departure. Odubanjo appealed the IJ's decision to

the BIA, which affirmed the decision without opinion on March 10, 2009. Odubanjo filed this

petition for review on March 18, 2009.[2]

**II.**

When the BIA summarily affirms the decision of an IJ, "we review the [immigration judge's]

decision as the final agency decision." *Kaba v. Mukasey*, 546 F.3d 741, 747 (6th Cir. 2008) (quoting

*Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003)). Under the deferential substantial evidence test,

we must sustain an IJ's decision if that determination is "supported by reasonable, substantial, and

probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481

(1992). To overturn an IJ's ruling "we must find that the evidence not only supports [a contrary]

conclusion, but *compels* it." *Kaba*, 546 F.3d at 747 (emphasis in original) (quoting *Elias-Zacarias*,

502 U.S. at 481 n.1).

**III.**

Odubanjo first appeals the BIA's affirmation of the IJ's decision denying her application for

asylum. Resolution of any request for asylum involves "a two-step inquiry: first, whether the

petitioner is a 'refugee' within the meaning of the [Immigration and Nationality Act], and second,

---

[2]The BIA extended Odubanjo's voluntary departure for 60 days from the date of its order, but noted that filing of a petition for review would terminate the grant of voluntary departure. On June 19, a panel of this Court denied Odubanjo's motion to stay removal pending review of her appeal. At that time, we concluded that she had not made a strong showing that she was likely to succeed on the merits of her claim, and that, even if removed, she could continue to pursue her petition.

whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Id.*

(alteration in original) (quoting *Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006)).  A refugee is

a person unable or unwilling to return to his country "because of persecution or a well-founded fear

of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion."  8 U.S.C. § 1101(a)(42)(A).  To prove refugee status, an alien must "present

specific facts demonstrating past persecution or a well-founded fear of future persecution motivated

by one of these five statutorily protected grounds."  *Allabani v. Gonzales*, 402 F.3d 668, 674 (6th

Cir. 2005) (citing *Elias-Zacarias*, 502 U.S. at 481).  "An applicant does not have a well-founded

fear of persecution if the applicant could avoid persecution by relocating to another part of the

applicant's country of nationality."  8 C.F.R. § 1208.13(b)(2)(ii).  Odubanjo does not allege past

persecution – and, indeed, cannot, as she bases her application for asylum on her conversion from

Islam to Christianity, which occurred after she had already left Nigeria.  Therefore, the question

before us is whether Odubanjo has presented sufficient evidence to *compel* the conclusion that she

has a well-founded fear of future persecution on account of her religion.

Odubanjo argues that the record in this case compels the conclusion that she has a well-

founded fear of persecution on account of religion, and that her case differs from that of an "ordinary

Christian" because she converted from Islam to Christianity.[3]  Odubanjo points out that – as the IJ

himself noted – there are serious problems between Muslims and Christians in Nigeria, and that there

---

[3]The prospective persecution feared in this case does not specifically concern Odubanjo's *religion* as a Christian, but rather her status as a *convert* from Islam to Christianity.  For the purposes of this appeal, we assume that persecution based on an individual's conversion from one religion to another falls within one of the five statutory categories described by 8 U.S.C. § 1101(a)(42)(A).

has been significant civil unrest.  She quotes a United Nations report concluding that there is a prohibition in the Muslim community on conversion and that "leaders of the Muslim community maintain [] that Sharia itself prohibits conversion from Islam to another religion and provides for the death penalty for this act."[4]  (JA 281.)  She concludes that she would be recognized as a convert because "[c]learly there are many people in Nigeria who knew her family's religion as they openly practiced their religion." (Pet. Br. at 15.)  People will ask about her family and religious practices, she adds, and she should not be forced to hide her family's religious past to avoid persecution.  In response to the IJ's conclusion that she could live in the southern portion of Nigeria, where Christians make up a majority of the population, Odubanjo argues that such a move would be unreasonable, as "she has never lived [in that part of the country], which would make it difficult to relocate there," and as she doesn't know anyone there.  (Pet. Br. at 15; JA 143.)

In denying Odubanjo's application for asylum, the IJ relied upon the Country Reports, the Freedom Report, and Odubanjo's own testimony.  According to the Country Reports, the Nigerian constitution provides for freedom of religion, and the government "generally respect[s] religious freedom." (JA 188.)  As the Freedom Report observes, at the time of the hearing before the IJ there were tens of millions of Christians living safely in Nigeria, and in some states in southeastern

---

[4]Odubanjo also states that she is worried that Christians will persecute her because her father, a Muslim, "fought against them previously." (Pet. Br. at 15).  Such fears are not relevant to her concern that, *as a convert* from Islam to Christianity, she will face persecution from Muslims.  Even if she is correct that she faces danger because of anger at her father's conduct – though she offers no evidence at all of such anger other than the statement that her father argued with Christians – any potential persecution on such grounds does not fall into one of the five statutory asylum categories, and so is not relevant to Odubanjo's application for asylum.

Nigeria, Christianity is the predominant religion. (JA 291, 296.) According to Odubanjo herself, she had not kept in touch with any of her family in Nigeria since leaving seventeen years earlier. She herself, moreover, had never been involved in any religious conflicts or violence.

We conclude that Odubanjo has not met her burden of presenting sufficient evidence to compel the conclusion that she has a well-founded fear of persecution should she return to Nigeria. Whether general religious violence is a problem in Nigeria is a different question from whether Odubanjo in particular will face persecution on account of her status as a convert. While Odubanjo has quoted language stating that conversion from Islam is not permitted under Shari'a and is punishable by death, she has not pointed to any instance in which an individual in Nigeria was in fact persecuted after converting from Islam to Christianity. More importantly, she ignores observations in the *same* report pointing out that even the Shari'a penal codes adopted in some northern Nigerian states do not include conversion from Islam to another religion among the offenses punishable by death, and that this is explained by "the reality of Nigeria, that is . . . the fact that in many places Christians and Muslims mix to a great extent and interfaith marriages are very common." (JA 281.) Odubanjo has also not pointed to any evidence suggesting that she, in returning to a country of around 140 million people, would be recognized as a convert, or that anyone would know of her father's reported difficulties with Christians. Moreover, Odubanjo's answer as to why it would be unreasonable for her to move to the southern portion of Nigeria – essentially that she has never lived there and so would find it difficult – is unconvincing. We note that when she used a false passport to enter the United States illegally in 1993, Odubanjo was similarly moving to an unfamiliar place.

As the IJ based his decision denying Odubanjo's application for asylum on "reasonable, substantial, and probative evidence on the record considered as a whole," *Elias-Zacarias*, 502 U.S. at 481, and as Odubanjo has not presented evidence compelling the conclusion that she has a well-founded fear of persecution should she return to Nigeria, Odubanjo's claim for asylum fails.

**IV.**

Odubanjo also appeals the BIA's affirmation of the IJ's decision denying her applications for withholding of removal and protection under the CAT. To obtain withholding of removal, an applicant who has not suffered past persecution must show that "it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country." 8 C.F.R. § 208.16(b)(2). "Because an alien must meet a higher burden in establishing a right to withholding of removal than in demonstrating asylum eligibility, an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). Because we find that Odubanjo has not met her burden in establishing asylum eligibility, we find that her claim for withholding of removal necessarily fails as well.

To obtain protection under the CAT, the applicant bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Ordinarily, an alien who fails to qualify for asylum because she cannot show a well-founded fear of future persecution cannot meet the heightened requirements for relief under the CAT – that she demonstrate that it is more likely than not that she will be tortured. *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (citing *Pilica v. Ashcroft*, 388 F.3d

941, 955 (6th Cir. 2004)). Here, Odubanjo expresses concerns not only about her status as a convert from Islam to Christianity – concerns fully dealt with in analyzing her asylum claim – but also about the possibility that she will face persecution from Christians angry that her father "fought against them previously." (Pet. Br. at 15.) The IJ, addressing this same argument, found that Odubanjo "falls far short of showing either that there is a probability that she would be harmed in Nigeria for any reason or that such harm would rise to the level of torture." (JA 73-74.) We note that Odubanjo has presented no evidence suggesting that anyone – much less any of the tens of millions of Christians in Nigeria – even knows about her father's conflicts with Christians. We also note that Odubanjo has failed to present any evidence regarding what exactly her father did (aside from engage in some fights and arguments with individuals) to earn the supposed lasting enmity of Nigerian Christians toward his Christian daughter. Accordingly, we find that Odubanjo has failed to demonstrate that it is "more likely than not" that she would face torture upon return to Nigeria.

## V.

As the IJ's original determination that Odubanjo does not have a well-founded fear of persecution should she return to Nigeria was supported by "reasonable, substantial, and probative evidence on the record considered as a whole," and as Odubanjo has not met her burden of presenting sufficient evidence to demonstrate that it is more likely than not that she would face persecution, much less torture, upon return to Nigeria, we **DENY** the petition for review.