**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0204n.06

**No. 16-3228**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ZHEN ZHU WENG, | ) | **FILED**<br>Apr 05, 2017<br>DEBORAH S. HUNT, Clerk |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ON PETITION FOR REVIEW** |
| | ) | **FROM THE UNITED** |
| JEFF B. SESSIONS, Attorney General, | ) | **STATES BOARD OF** |
| | ) | **IMMIGRATION APPEALS** |
| Respondent. | ) | |
| | ) | |

**BEFORE: GIBBONS, COOK, and KETHLEDGE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Zhen Zhu Weng appeals the Board of Immigration Appeals' ("BIA") denial of his motion to reopen proceedings on the basis of ineffective assistance of counsel. Weng alleges that he did not file an individual asylum claim—and instead sought to remain in the United States by filing a derivative claim to his wife's asylum application—based on his attorney's faulty advice. Additionally, he claims that any time bar that might preclude his claim should be equitably tolled due to his attorney's deficient performance.

Assuming, without deciding, that Weng was entitled to equitable tolling, the BIA did not err in refusing to reopen proceedings because Weng cannot make out a *prima facie* claim to relief. Therefore, we affirm the BIA's decision to deny Weng's motion to reopen.

I.

Zhen Zhu Weng, a native of the People's Republic of China, entered the United States illegally in January 2009. Weng entered the United States from Mexico and initially settled in San Diego. Around this same time, Weng met his future wife, Meirong Zhang.

Zhang is also a native of the People's Republic of China. After being proselytized to by a friend, Zhang began attending an underground church in March 2008. Zhang testified that she became a Christian while living in China and attended church every Sunday until December 21, 2008. That day, her underground church was raided by local authorities and Zhang was detained for seven days. During her detention, Zhang claims that she was twice slapped by the police. Zhang decided to leave China because she feared further persecution for her Christian faith. Like her husband, she used a "snakehead" to illegally enter the United States from Mexico.

After meeting Zhang, Weng, too, became a Christian. The couple married and moved to New York City. In May 2011, they moved to Murfreesboro, Tennessee, and, that December, they had a baby boy. Subsequently, via the Chinese consulate, they sent their baby back to China to live with his grandparents because, as Zhang testified, she was "very inexperienced." (Administrative Record [A.R.] at 167.)

Shortly after arriving in the United States, Weng and Zhang received notices to appear. At their initial appearance on November 24, 2009, Weng and Zhang conceded removability, but sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

On May 22, 2013, Zhang and Weng appeared before an immigration judge ("IJ") in Memphis, Tennessee. Weng did not file an individual application for asylum; instead, he sought to remain via a derivative claim to his wife's application. The IJ asked Weng's counsel if he was

planning to file an individual application and if Weng understood that he could not stay as a derivative applicant if Zhang was granted only withholding of removal or CAT protection. Counsel answered that this was his understanding.

The IJ denied Zhang's application for asylum, withholding from removal, and request for relief under CAT and ordered Zhang and Weng removed to China. Zhang and Weng appealed to the BIA. On May 13, 2013, the BIA affirmed the IJ's decision, assuming, without deciding, that Zhang was credible,[1] but agreeing that she had not demonstrated past persecution or a well-founded fear of future persecution if she returned to China. Zhang and Weng did not timely appeal the BIA's decision to this court, but subsequently sought to file an out-of-time petition. We denied that petition because we found no evidence to support their claim that the BIA decision was mailed to their counsel's old address.

On December 15, 2015, after retaining new counsel, Weng filed a motion to reopen the proceedings as to his removal, alleging ineffective assistance of counsel. Weng raised two claims of deficient performance—one premised on his former counsel's failure to inform Weng that he should file an independent claim and the other based on counsel's failure to inform him and Zhang of the BIA's adverse decision, which resulted in the couple's missing the deadline to appeal their case to this court. On December 30, 2015, Weng filed his own application for asylum in which he alleged fear of future persecution because of his Christian faith. On March 4, 2016, the BIA denied Weng's motion to reopen. It found "no merit" to his claim that he became aware only recently that he could have filed an independent asylum application. (A.R. at 742.) Further, the BIA found that Weng had not shown due diligence in pursuing his rights as more than two years had passed since the IJ inquired about Weng submitting an individual asylum application. The BIA also reached the merits of Weng's motion to reopen and found

---

[1] The IJ found that Zhang was incredible.

that, even if his motion to reopen were not time barred, Weng had not offered sufficient evidence to support his claim that he would suffer persecution upon his return to China. This appeal followed.

## II.

Generally, we review the denial of a motion to reopen for an abuse of discretion. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (citing *INS v. Abudu*, 485 U.S. 94, 107 (1988)). We "must possess a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id*. (quoting *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir. 1982)). "In determining whether the Board abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id*. (alterations in original) (quoting *Allabani v. Gonzales*, 402 F.3d 688, 675 (6th Cir. 2005)).

Where, however, the motion to reopen claims ineffective assistance of counsel, that claim is reviewed *de novo*. *Id*. (citing *Allabani*, 402 F.3d at 676). In such cases, the applicant "carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness." *Id*. (quoting *Allabani*, 402 F.3d 676); *see also Denko v. INS*, 351 F.3d 717, 724 (6th Cir. 2003).

## III.

Motions to reopen removal proceedings must be brought within 90 days of a final administrative order of removal being issued. *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) (citing 8 U.S.C. § 1229a(c)(7)(C)(i) and 8 C.F.R. § 1003.2(c)(2)). Weng did not bring his

motion within this time, but an applicant may seek to have the filing period equitably tolled.[2] *Id*. at 724. Here, however, the BIA found that Weng failed to exercise due diligence in pursuing his claim. It rejected his argument that he did not realize until recently that he could have filed an independent application and highlighted that more than two years had passed since the IJ asked Weng whether he would be filing an independent application. We need not determine whether Weng was entitled to equitable tolling of his motion to reopen, however, because, even assuming that he was, the BIA properly denied his motion to reopen.

The Supreme Court has identified three independent grounds upon which the BIA may deny an alien's motion to reopen. "First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought." *Abudu*, 485 U.S. at 104. "Second, the BIA may hold that the movant has not introduced previously unavailable, material evidence . . . or, in an asylum application case, that the movant has not reasonably explained his failure to apply for asylum initially." *Id*. at 104–05 (internal citations omitted). And lastly, "in cases in which the ultimate grant of relief is discretionary (asylum, suspension of deportation, and adjustment of status, but not withholding of deportation), the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." *Id*. at 105.

Here, the BIA found that Weng had not "offered evidence with his motion to support his claim that he would suffer persecution upon his return to China on account of his religion" and

---

[2] "Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) (alteration in original) (quoting *Tapia-Martinez v. Gonzales,* 482 F.3d 417, 422 (6th Cir. 2007)). This court considers five factors when determining whether to apply equitable tolling to time-barred claims, one of which is the petitioner's diligence in pursuing his or her rights. *Id*. (quoting *Ajazi v. Gonzales*, 216 F. App'x 515, 518 (6th Cir. 2007)).

went on to find that "he [had] not met his burden to prima facie demonstrate that he will likely suffer mistreatment amounting to persecution upon his return to China based on his practice of Christianity to warrant reopening his removal proceedings." (A.R. at 742.) It further noted that Weng had not "presented evidence to establish a material change in circumstances or country conditions" sufficient to warrant reopening. (*Id*.) These findings do not constitute an abuse of discretion on the part of the BIA.

The BIA was correct to find that Weng's claim failed because he did not include a new or independent asylum application, or any other evidentiary documentation, with his motion to reopen, leaving it totally unsupported. The relevant regulation provides: "A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2. Here, Weng's motion to reopen and his attached affidavit are completely devoid of any facts that would support even a *prima facie* finding that he might be entitled to relief. Nowhere does either mention any facts relating to his fear of returning to China because of his Christian faith.

Further, even though the BIA did not have to consider Weng's I-589 application, *see* 8 C.F.R. § 1003.2(c), which was filed more than two weeks after his motion to reopen, it appears that it did so anyway and still denied his motion. Again, the BIA was within its discretion to do so. Weng did not become a Christian until after he emigrated from China. Thus, he cannot demonstrate past persecution on account of his religion, precluding him from a presumption that he will suffer future persecution. *See Hua Tu Lin v. Holder*, 412 F. App'x 848, 855 (6th Cir. 2011). To succeed, then, Weng would need to show that he has a "well-founded fear of future persecution, which must be both subjectively genuine and objectively reasonable." *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (internal citations and quotation marks omitted).

An applicant cannot rely, however, on "speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Id.* (quoting *Mateo v. Gonzales*, 217 F. App'x 476, 484 (6th Cir. 2007)).

As the BIA found, Weng's statement regarding his fear of future prosecution is generalized and non-specific. In it, Weng states only that he is Christian, would continue to be one in China, and that, based on information from his wife and unnamed friends, he believes that unregistered religious groups are subject to intimidation, harassment, and detention. This, without more, is insufficient to reverse the BIA's decision to deny Weng's motion to reopen. *See INS v. Doherty*, 502 U.S. 314, 323 (1992) ("Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence."). Weng cannot demonstrate that the BIA's decision was without rational explanation, that it explicably departed from established policies, or that it rested on any impermissible basis. *Allabani*, 402 F.3d at 675.

Lastly, Weng claims that his motion to reopen should be granted because his former counsel was deficient in failing to provide him and Zhang with sufficient notice of the BIA's decision denying her claim to relief. However, the mere loss of appellate rights is insufficient to demonstrate prejudice. *Sako*, 434 F.3d at 864; *see also Denko*, 351 F.3d at 724; *Huicochea–Gomez v. INS*, 237 F.3d 696, 699–700 (6th Cir. 2001). Instead, the applicant must show that, had he taken the appeal, he would be entitled to remain in the United States. *Sako*, 434 F.3d at 864. Weng's motion to reopen, however, stated only that his former attorney's deficient performance "deprived [him] of the opportunity to argue [his] case before the Court of Appeals."

(A.R. at 772.)  This, without more, is insufficient to warrant a finding of prejudice or a reopening of the proceedings.

IV.

For the reasons stated above, we affirm the BIA's decision to deny Weng's motion to reopen.