# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-2492

———————

| | | |
|---|---|---|
| Kefay Gebremaria, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| John Ashcroft, Attorney General | * | |
| of the United States, | * | |
| | * | |
| Respondent. | * | |

———————

Submitted: June 17, 2004
Filed: August 2, 2004

———————

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

———————

SMITH, Circuit Judge.

Kefay Gebremaria seeks review of a denial by the Board of Immigration Appeals ("Board") of her motion to reopen her deportation case. We affirm.

## I. *Background*

Gebremaria lawfully entered the United States in April of 1995 as a visitor from Ethiopia. She applied for asylum alleging fear of persecution due to her political activity within Ethiopia. In August 1997, an immigration judge denied Gebremaria's asylum application following a hearing conducted in September 1996. Gebremaria appealed to the Board, which subsequently dismissed her appeal on December 26,

2001. In May 2003, Gebremaria filed a petition to reopen based on new evidence and evidence of changed circumstances. Specifically, Gebremaria claimed that because of her Human Immunodeficiency Virus ("HIV")[1] status she "would face a death sentence" if she were forced to return to Ethiopia. She also claimed that her husband had disappeared in Ethiopia two years earlier after being arrested and jailed by Ethiopian authorities, and that her family thought he had been killed. Lastly, she claimed that her political association with the All-Amhara People's Organization, ("AAPO") a political group, placed her in danger of future persecution.[2]

In support of her motion to reopen, Gebremaria submitted a January 2002 letter from her doctor in the United States, stating that he "ha[d] seen [Ms. Gebremaria] since 1997," and that "[a]t that time she was diagnosed with advanced AIDS." She also submitted a May 2003 letter from the same doctor stating that Gebremaria "has been followed and treated in the Infectious Diseases Clinic for several years," and that "[h]er lowest CD4 count has been 74 in August of 1997, well below the 200 cutoff for AIDS." Finally, Gebremaria submitted a May 2003 letter from her sister in Ethiopia that stated that Gebremaria's husband had disappeared from jail two years earlier, and that she should not return to Ethiopia.

The Board denied Gebremaria's motion to reopen her case on June 10, 2003. The Board denied the motion upon finding: 1) the HIV/AIDS evidence Gebremaria wanted to present was not "new" evidence and could have been presented at the original hearing in 1997; 2) insufficient evidence existed regarding the circumstances

---

[1] HIV is the virus that causes Acquired Immunodeficiency Syndrome or "AIDS."

[2] Gebremaria did not claim in her motion that she was entitled to protection pursuant to the United Nations Convention Against Torture. However, the motion noted that Gebremaria would be eligible at some point to adjust her status to that of a lawful permanent resident of the United States based upon a Visa petition filed on her behalf by her brother.

of her husband's imprisonment and two-year disappearance in Ethiopia to establish a prima facie case of asylum eligibility; 3) Gebremaria failed to establish prima facie eligibility for adjustment of status to that of a lawful permanent resident of the United States. Gebremaria timely petitioned this court for review.[3]

## II. *Analysis*

On appeal, Gebremaria asks us to reverse and remand to allow an immigration judge to consider her petition for asylum due to her HIV health status and her husband's disappearance and possible death.[4] She also seeks to supplement the record on appeal.

### A. *Motion to Supplement the Record*

As an initial matter, we address Gebremaria's petition to supplement the record on appeal. Gebremaria asks to include an affidavit from a family member who recently reestablished contact with Gebremaria's husband. The affidavit indicates that

---

[3] The Board entertained Gebremaria's petition to reopen her deportation proceedings pursuant to 8 C.F.R. § 1003.2(a). The Board's June 10, 2003, decision denying the motion was a final order of deportation from the United States. Because her deportation proceedings were pending before April 1, 1997, and because she received a final order of deportation from the Board after October 31, 1996, this is a "transitional" case, and we possess jurisdiction to entertain Gebremaria's petition for review of the Board's decision pursuant to 8 U.S.C. § 1105a(a) (1994). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 309(c)(1), Pub. L. No. 104-208, 110 Stat. 3009, 3009-626 (Sept. 30, 1996).

[4] Gebremaria waived (by failing to argue on appeal) a final issue regarding her possible future persecution in Ethiopia for her affiliation with the All-Amhara People's Organization ("AAPO"). In addition, although she now claims that she is entitled to protection pursuant to the Convention Against Torture, we lack jurisdiction to hear that claim because she did not raise that in her motion to the Board. *Afolayan v. INS*, 219 F.3d 784, 788 (8th Cir. 2000) (in reviewing decisions of the Board, we lack jurisdiction to review claims that were not presented to the Board in the first instance).

the husband escaped from prison and has been in hiding for two years. We deny this request.

Before IIRIRA, this and other circuits used 28 U.S.C. § 2347(c) to invoke discretionary authority to remand immigration cases in which 8 U.S.C. § 1105a(a)(4) applied, so that new, non-record evidence could be admitted on appeal and remanded for consideration by the Board. *See*, *e.g.*, *Makonnen v. INS*, 44 F.3d 1378, 1384–86 (8th Cir. 1995); *Saiyid v. INS*, 132 F.3d 1380, 1384–85 (11th Cir. 1998); *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000–02 (10th Cir. 1987); *Bernal-Garcia v. INS*, 852 F.2d 144, 147 (5th Cir. 1988); *Dolores v. INS*, 772 F.2d 223, 226–27 (6th Cir. 1985) (per curiam); *Coriolan v. INS*, 559 F.2d 993, 1002–04 (5th Cir. 1977). However, because this is a transitional case,[5] the IIRIRA § 309(c)(4)(B) directs that "a court may not order the taking of additional evidence under section 2347(c) of title 28." *Najjar v. Ashcroft*, 257 F.3d 1262, 1279 (11th Cir. 2001)*; Altawil v. INS*, 179 F.3d 791, 792–93 (9th Cir. 1999). Thus, IIRIRA's prohibition of remanding for the consideration of additional evidence pertains to non-record evidence that is introduced in the first instance before a reviewing court. *See Cardenas-Uriarte v. INS*, 227 F.3d 1132, 1138 (9th Cir. 2000) ("Section 2347 concerns a party's appeal to [this] court [asking permission] to adduce additional evidence, for example, where new evidence about a well-founded fear of persecution is discovered.").

We, as did the court in *Najjar*, 257 F.3d at 1281–82, interpret IIRIRA § 309(c)(4)(B) as eliminating our authority under § 2347(c) to remand to the Board so that an alien can present "additional evidence." *See* IIRIRA § 309(c)(4)(B); *Saiyid*, 132 F.3d at 1384 n. 5 (noting, in dicta, that IIRIRA "eliminates § 2347 jurisdiction over motions to reopen"). Under transitional rule § 309(c)(4)(B), we must act within

---

[5] Transitional cases are those where a final order of deportation is entered more than thirty days after the September 30, 1996, enactment of IIRIRA and deportation proceedings are begun before April 7, 1997.

the constructs of § 1105a(a)(4) and may not rely on our § 2347(c) authority. As such, IIRIRA § 309(c)(4)(B) is a jurisdictional bar that precludes our consideration of non-record evidence submitted for the first time on appeal. Gebremaria's motion to supplement is therefore denied.

## B. *Merits*

Motions to reopen deportation proceedings, like petitions for rehearing and motions for new trial, are disfavored because of the strong public interest in bringing litigation to a close, and because "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *INS v. Abudu*, 485 U.S. 94, 108 (1988) (quotation omitted). In *Abudu*, the Supreme Court noted at least three independent grounds on which the Board may deny a motion to reopen: failure to establish a prima facie case for asylum; failure to introduce previously unavailable, material evidence or failure to reasonably explain why asylum was not initially sought; or a determination that the movant would not be entitled to this discretionary relief. *Id*., 485 U.S. at 104–05. The Board's decision is reviewed under the abuse of discretion standard. *Id*.; *Raffington v. INS*, 340 F.3d 720, 722–23 (8th Cir. 2003).

## 1. *Evidence of HIV/AIDS Status*

In her first claim for relief, Gebremaria argues that the Board abused its discretion in denying her motion to reopen because evidence of her HIV/AIDS status is material evidence that was unavailable at the time of her deportation hearing. In addition, she argues that circumstances in Ethiopia have changed due to the HIV/AIDS epidemic in that country. She argues that if she returns to Ethiopia, she will be unable to procure the medication used to control the virus and "she would face a death sentence." Gebremaria argues that she did not present this evidence to the immigration court or the Board because she only learned of her HIV/AIDS status two months prior to her final hearing, and she had not yet considered the long-term effects

of having a life-threatening disease. Gebremaria cites to various reports regarding the epidemic in Ethiopia and Ethiopia's failure to manage the problem to date. Although Gebremaria notes that she was provided a list of treatment centers in Ethiopia, she argues that the list does not contain information regarding the type of treatment available or whether she would have access to medication at these facilities. She also notes that she suffers from other serious health problems, including a thyroid condition requiring radiation therapy, diabetes mellitus, and high blood pressure. Finally, she argues that, as a known member of the opposition party, she would likely suffer at the hands of a government that controls the treatment centers. And, because she had been imprisoned before for her political views, she likely would be again and suffer greatly because of her medical condition.

The government responds that Gebremaria knew of her HIV/AIDS status at the time of her original proceedings but failed to notify the immigration judge of her condition. The government notes that as of August 1997 (when the immigration judge denied her asylum application), Gebremaria knew–but failed to apprise the judge–of her condition. Therefore, the government argues, the Board did not abuse its discretion because the evidence was previously available.

Gebremaria's first deportation hearing occurred on September 19, 1996, and the hearing to determine the merits of her claim occurred on August 13, 1997, after which the judge rendered an oral decision. The medical evidence presented by Gebremaria includes two letters from her treating physician, Dr. David Strike, dated May 6, 2003, and January 14, 2002. The January 2002 letter stated that he had seen Gebremaria since 1997, and at that time she was diagnosed with "advanced AIDS." The letter did not specify the exact time that Dr. Strike first saw her. The May 2003 letter indicated that Gebremaria's CD4 count was "well below the 200 cutoff for AIDS" in August 1997. Again, the letter did not specify the date the CD4 count measurement was taken.

There is no statutory provision for the reopening of a deportation proceeding, and the regulations do not specify the conditions under which a motion to reopen must be granted. *Khalaj v. Cole*, 46 F.3d 828, 833 (8th Cir. 1995) (citing *INS v. Doherty*, 502 U.S. 314, 321–23 (1992)). The applicable regulation indicates that a motion to reopen for additional evidence must state new and material facts that were not available and could not have been discovered or presented at the prior hearing. 8 C.F.R. § 3.2(c) (1994). The Board ruled that the advanced nature of her condition in August 1997 indicated that Gebremaria knew and appreciated the seriousness of her condition. The Board determined that this evidence was previously available at the final hearing, and that she should have presented the information to the immigration judge at that time. Gebremaria was aware of–yet failed to present evidence concerning–her condition prior to the final decision in her case. Due to the deferential nature of our review, we find that the Board did not abuse its discretion in denying Gebremaria's motion to reopen her deportation case based on her claim of new and material evidence.

B. *Prima Facie Case for Asylum*

Gebremaria next argues that the Board abused its discretion in determining that she could not make a prima facie case for political asylum. She argues that the evidence of her husband's imprisonment and disappearance, during which time the family believed he was dead, supports her claim that she would suffer future persecution at the hands of the Ethiopian government. She argues that her political connections to the AAPO subjected her to past persecution when she was jailed for a month after participating in a rock-throwing demonstration, and that if she returns to Ethiopia, the same people would persecute her for her political beliefs. She asserts that this danger is even worse now than at the close of her hearing in 1997.

To qualify for asylum, an alien must show persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(2)(A)(iii); *INS*

*v. Elias-Zacarias*, 502 U.S. 478, 481–82 (1992). Subjectively, the alien must demonstrate with credible evidence that he or she genuinely fears persecution; objectively, the alien must demonstrate through credible, direct, and specific evidence that a reasonable person in his or her position would fear persecution. *Nyonzele v. INS*, 83 F.3d 975, 983 (8th Cir. 1996). Although acts of violence against an alien's family members may demonstrate a well-founded fear of persecution, absent a pattern of persecution tied to the asylum applicant himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution. *Id.*, 83 F.3d at 983. In *Nyonzele*, for example, the alien alleged in part that he held a well-founded fear of persecution because his father had been murdered due to his political beliefs and due to the alien's desertion from his country's military. We determined, however, that there was no pattern of persecution linked to the alien himself, and that his father's murder was due to his political beliefs rather than to any action taken by the alien. *Id.* We also noted that there was no evidence that any family members surviving the alien's father suffered physical persecution by the government. *Id.*

Gebremaria offers evidence that she presented to the immigration judge and Board in her original asylum petition. That evidence included her past month-long imprisonment following the political demonstration. However, the immigration judge and Board determined that this evidence alone was insufficient to establish a fear of future persecution due to her political beliefs. Therefore, to bolster her claim here, she submitted evidence relating to her husband's disappearance following his imprisonment in an Ethiopian prison. Gebremaria argues that this evidence indicates that if she returns to the country, she would be subject to the same fate. However, Gebremaria's evidence is insufficient under our case law to establish a claim for fear of future persecution based on acts against her husband which, without evidence more specific as to Gebremaria, cannot be imputed to her. *Nyonzele*, 83 F.3d 975. As such, the Board did not abuse its discretion in determining that Gebremaria failed to establish a prima facie case for asylum.

Based on the foregoing, we deny Gebremaria's motion to supplement the record and her petition to review the Board's denial of her motion to reopen her deportation case.

_____