**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0864n.06

Nos. 09-4442; 09-4444

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Dec 21, 2011*

LEONARD GREEN, Clerk

ALEKSANDER SPAQI,

        Petitioner,

v.

ERIC H. HOLDER, JR.,
Attorney General,

        Respondent.

_____/

ON PETITION FOR REVIEW
OF A FINAL ORDER FROM THE
BOARD OF IMMIGRATION

BEFORE: SUHRHEINRICH, MOORE, and COOK, Circuit Judges.

      **RICHARD F. SUHRHEINRICH, Circuit Judge.** Aleksander, Preke, Prene, Bernardina, and Andrian Spaqi petition this court for review of the Board of Immigration Appeals's ("BIA") decisions denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In Case No. 09-4442, Aleksander ("Aleksander") petitions for review of the BIA's denial of asylum on the grounds that the BIA violated his constitutional right to procedural due process. He also claims that he established past persecution and a well-founded fear of future persecution, and that it is more likely than not that he will be persecuted or tortured if returned to his country of origin. In Case No. 09-4444, Prek, Prene, Bernardina, and Andrian (collectively "Petitioners") claim that the Immigration Judge ("IJ") abused her discretion when she denied their motion to sever their derivative applications after the principal applicant, Prek Spaqi, was determined to be statutorily barred from asylum and withholding. They also contend that the

BIA abused its discretion when it denied their motion to remand, and that they qualify for protection under the CAT.

Because we conclude that Aleksander's claim fails on the merits, we do not address his due process claim. We **DENY** Aleksander's requests for asylum and withholding of removal. Because he waived his challenge to the BIA's denial of his CAT claims, we **DENY** review of Aleksander's request for protection under the CAT.

We also **DENY** the Spaqi family's petition for review in Case No. 09-4444, because the BIA did not abuse its discretion in denying the motion to sever. The Spaqis failed to challenge the IJ's denial of their CAT claim, and it is therefore beyond the scope of this court's review.

## I. BACKGROUND

Petitioners in these consolidated cases belong to the same immediate family. They are all natives of the former Yugoslavia who were all born in the village of Djakvoica near the Albanian border in what is now Kosovo. The parties to the petition for review in Case No. 09-4444 are Prek Spaqi ("Prek"), his wife Prene, their daughter Bernardina, and son Andrian. Their son Aleksander Spaki ("Aleksander") is a party to a separate but consolidated petition for review in Case No. 09-4442.

The Spaqis entered the United States without permission near Laredo, Texas on September 4, 2004. On the same day, the Department of Homeland Security ("DHS") filed Notices to Appear ("NTA") against Prek, Prene, Bernardina, and Andrian, charging them with being subject to removal for entering the United States without having been admitted or paroled. DHS filed an NTA against

Aleksander on November 2, 2004. Each of the petitioners admitted the factual allegations in the NTAs and conceded removability. An IJ granted their motions to change venue to Detroit, Michigan.

On August 24, 2005, Prek filed applications for asylum, withholding of removal, and protection under the CAT, listing other family members as derivative beneficiaries.[1] Aleksander was included on his father's application as a derivative beneficiary. Aleksander was twenty years old at the time of entry and turned twenty-one shortly thereafter.[2] The IJ "separated out" Aleksander's claim because he was twenty-one years old, and could not longer qualify as a derivative beneficiary of his father. Aleksander appeared before an IJ the same day in a preliminary master calender hearing. On October 5, 2005, Aleksander filed a separate application for asylum, withholding of removal, and protection.

On November 6, 2006, Prek Spaqi testified before the IJ in support of his applications for relief. Administrative Record ("A.R."), 09-4442[3], at 634-91. Prek testified that his family was involved in a land dispute with their neighbors, the Romojas. Prek stated that sometime around 1984, the Serbian government "created a law to fix . . . the parts of land in Kosovo," and a

---

[1]A spouse and children under age twenty-one may also be granted asylum if the "principal applicant," 8 C.F.R. § 1208.21(a), lists them on his application and they are in the United States. *Id.* § 11208.3(a). *See* 8 U.S.C. §§ 1158(b); 1101(b)(1).

[2]Aleksander was born on October 10, 1983. He entered the United States on September 4, 2004. He turned twenty-one on October 10, 2004.

[3]The testimony of Prek Spaqi and Nicole Pepa, is part of the record in both Case Nos. 09-4442, and 09-4444. For ease of reference, the citations provided are found in Case No. 09-4442.

commission from Gjakova seized a portion of Prek's land and opened a road behind his house. A.R. 637-38. Prek told the IJ that he filed a complaint with the Directory in Pristina, that "experts" were sent to the site, and that the Directory ruled that "the Commission from Gjakova" had to return the land to Prek. A.R. 641. The Gjakova Commission appealed that decision to the Supreme Court, which ruled that the Gjakova Commission had to return the land to the Spaqis and close the road it was constructing behind Prek's house. A.R. 642.

When the Romoja family refused to close the road, Preq's brother proceeded to do so himself one day while Prek was hunting. A.R. 643. Upon his return home, Prek observed the Romojas get "real angry" at his brother, and that "12 people came . . . and started shooting." Prek shot his pistol "three times in the air[,] . . . two killings happened," and two members of the Romoja family were killed. A.R. 643-45. About an hour later, the police arrested Spaqi, his father and brother, and took them to jail in Pia, Kosovo. A.R. 645. Following a hearing, Prek was sentenced to twelve years for murder and attempted murder, and his brother was sentenced to death. A.R. 646. Prek appealed to the Pristina Supreme Court, and on November 23, 1989, that court reduced his sentence to three years, because of "mistakes" made by the trial court. A.R. 647, 652. According to Prek, the Pristina Supreme Court determined that the Romoja family "did shoot on us," and that he was "sentenced before that I did kill somebody but that was not true." A.R. 648.

Prek told the IJ that he did not go back to his village upon his release from prison, because he feared retribution. He explained that "right away when . . . a member of [a] family there is killed they are in a blood feud." A.R. 653-54. Prek lived six or seven kilometers outside of his village until 1996, when he left for Croatia. A.R. 655-57. He visited his village in Kosovo seven times,

without incident. A.R.657-58. In 1998, he moved his entire family to Albania. A.R. 658-59. At this time he learned from his wife that the Romoja family was "beating a lot their kids [and] their men," and that a priest had attempted a reconciliation, but that the Romoja family had refused. A.R. 659-60.

Nicole Pepa, a national of Kosovo, a legal permanent resident of the United States, and a relative of the Spaqi family, also testified. A.R. 612-32. Pepa told the IJ that he has known the Spaqi family since he was two years old, and that the Spaqis are "one of the most well known families in Kosovo, and the most patriotic family in Kosovo." A.R. 616. He explained that he was "a chief for reconciliation of the blood-feud," which he characterized as a non-governmental reconciliation commission. A.R. 617, 632. Pepa stated that the blood feud between the Spaqis and the Romojas began when the government seized the Romojas's land and redistributed it to the Spaqi family. Pepa indicated that he was unable to resolve the dispute between the two families. A.R. 621-25.

The IJ found Prek ineligible for asylum and withholding as a matter of law as a result of his conviction and sentence for attempted murder. Counsel subsequently moved to sever the cases of Prene, Bernardina, and Andrian, the three family members who remained as derivative beneficiaries. The IJ denied the motion. After testimony was complete, the IJ issued an oral decision determining that Prek was statutorily barred from asylum and withholding of removal as a result of his commission of a particularly serious crime. The IJ also denied Prek's application for protection under the CAT. She then ordered Prek, Prene, Bernardina, and Andrian deported to Serbia.

The Spaqi family appealed the decision. The BIA affirmed the IJ's decision and dismissed the appeal. The Spaqi family timely petitioned this court for review of the BIA's decision.

On September 22, 2008, Aleksander testified at a hearing before the same IJ in support of his application for relief. Aleksander also testified that his family was engaged in a blood feud with the Romoja family in Kosovo, concerning "the land," and that his life would be in danger if he returned to Kosovo. Aleksander stated that he suffered many beatings from the older Romoja boys. He stated that when he was about thirteen years old, he went to live with his aunt in a village approximately ten kilometers away from Qerim, because his mother told him his life was in danger. Aleksander reported that during his second year of high school, friends of the Romoja family beat him on one occasion, pushing him to the ground and warning "that one day [they] are going to kill the entire family." Aleksander stated that he was afraid to report the incident to the police and that when he told his parents, they said to be careful. Aleksander claimed that he wanted to go to college but the Romoja family prevented it "[b]ecause they have many people that work for these things with money." Aleksander stated that he came to the United States with his family "to get out of danger."

The IJ allowed Aleksander to introduce the transcript of his father's proceeding. The IJ and BIA therefore considered the testimony of Prek and Pepa in deciding Aleksander's case.

On December 1, 2008, the IJ issued a written decision determining that Aleksander failed to file within one year of entry and was therefore ineligible for asylum, denying his applications for withholding of removal and protection under the CAT, and ordering him removed to Kosovo. The IJ determined that Aleksander failed to show past persecution or a well-founded fear of future persecution on account of a protected ground, and had not demonstrated a likelihood that he would

suffer torture with the acquiescence of the Kosovo government. She found Aleksander credible but concluded that his testimony was not sufficiently detailed and persuasive without corroborating documentation. Aleksander filed a timely appeal.

On October 30, 2009, the BIA affirmed the IJ's decision and dismissed the appeal. The BIA agreed with the IJ's determination that Aleksander was ineligible for asylum because his application was filed after the one-year period, and was unable to establish changed or extraordinary circumstances relating to the delay. In the alternative, the BIA "agree[d] with the [IJ]'s alternative finding that [Aleksander] failed to demonstrate eligibility for asylum." The BIA stated that it

> agreed with the Immigration Judge that [Aleksander's] evidence of a family blood feud, where [Aleksander] was beaten up by members of the rival family, did not rise to the level of past persecution on account of a statutorily protected ground. As noted by the Immigration Judge, the discord between the families stemmed from a fatal shooting, and an angry family seeking revenge for the death of their family member. (I.J. at 13). *See Klawitter v. INS*, 970 F.2d 149 (6th Cir. 1992) (finding harm based solely on a personal vendetta does not constitute persecution on account of a statutorily protected ground).

A.R. at 3 (BIA Decision at 2). The BIA referenced the IJ's finding that: "The alleged blood feud has its origin in the criminal actions of certain members of the Spaqi family. [Aleksander] . . . failed to establish that the alleged private actions targeted the Spaqi family as a group or that the government has failed or refused to act." A.R. at 92 (IJ Decision at 13).

The BIA also ruled that Aleksander failed to meet the higher standard for withholding of removal and that he could not prove likelihood of torture by or with the acquiesence of the government to qualify for protection under CAT.

Aleksander filed a timely petition for review in this court. *See* 8 U.S.C. § 1252(b)(1). His appeal was later consolidated with his family's.

## II. ANALYSIS

### A. Standards of Review

Because the BIA issued its own opinion rather than summarily affirming the IJ, we review the decision of the BIA as the final agency determination. *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). "To the extent the BIA adopted the [IJ]'s reasoning, however, this Court also reviews the [IJ]'s decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Questions of law are reviewed de novo. *Id.* We review both the IJ's and the BIA's factual findings under the substantial-evidence standard. *Id.* "These findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted and citation omitted).

### B. Aleksander's Appeal, Case No. 09-4442

### 1. Timeliness

The Board adopted the IJ's determination that Aleksander was ineligible for asylum because he failed to file within the one-year period, and that he failed to establish any changed or extraordinary circumstances related to his delay. Because we conclude that substantial evidence supports the BIA's determination that Aleksander has not demonstrated eligibility for asylum, we do not address this argument.

## 2. Merits

Aleksander appeals the BIA's alternative holding denying his asylum claim on the merits, as well as his claims for withholding of removal and protection under the CAT. To qualify for asylum relief, Aleksander must demonstrate that he was subject to past persecution or has a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also id.* § 1158(b)(1)(B)(i); *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). To establish that the persecution is "on account of" the protected ground of his political opinion or social group, Aleksander must provide "some evidence . . . direct or circumstantial," that his persecutors are motivated by his political opinion or social group. *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). "Persecution is 'the infliction of harm or suffering by the government, or persons a government is unwilling or unable to control, to overcome a characteristic of the victim.'" *Awad v. Holder*, 2011 WL 2711069, at *5 (6th Cir. July 12, 2011) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citing *In re Kasinga*, 21 I & N. Dec. 357 (BIA 1996))). "Asylum is not available to an alien who fears retribution solely over personal matters." *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008).

As the testimony reflects, the blood feud related to the land dispute, which Prek himself acknowledged was a "personal problem." More importantly, the record shows that the police and government authorities were active in both trying to resolve the land dispute and prosecute the members of families who had engaged in murder or attempted murder of rival families. The land dispute was resolved through the court system in Prek's favor. Prek and his brother were arrested for their role in shootings. And the court system again acted in Prek's favor, eventually reducing his

sentence from twelve years to three years. These facts belie any assertion that the government was unwilling or unable to control the alleged perpetrators.

The record also established that after Prek left the village where he had been involved in the killing of two members of the Romoja family, his family members remained there essentially without harm. Moreover, Prek's brother returned to Kosovo after his release from prison and did not report any harm or harassment. Although Aleksander contended it was necessary for him to live with his aunt ten kilometers from home, he did not suffer any serious harm from the Romoja family. Aleksander claimed he was beaten by the older Romoja boys, but the incidents were never reported to the police. *See El Ghorbi v. Mukasey*, 281 F. App'x 514, 517 (6th Cir. 2008) (holding that the alien failed to show persecution for purposes of attaining asylum where she never complained to or sought protection from the government or the police); *Vata v. Gonzales*, 243 F. App'x 930, 943 (6th Cir. 2007) (holding that the alien failed to demonstrate that Albanian authorities were unwilling or unable to protect him where he failed to report threatening phone calls to the Albanian police).

In short, in this case, the "culture of blood feud . . . is wholly independent of political activity." *Kalaj v. Gonzales*, 137 F. App'x. 851, 855 (6th Cir. 2005) (in the context of Albania). *See also Locaj v. Gonzales*, 219 F. App'x 483, 485 (6th Cir. 2007) (same). Even assuming the Spaqi family constitutes a meaningfully defined social group, Aleksander failed to establish his membership in this social group motivated any persecution. *See Locaj*, 219 F. App'x at 485.

Because Aleksander failed to prove eligibility for asylum, he cannot establish the more stringent standard for withholding of removal. *See Liti v. Gonzales*, 411 F.3d 631, 640-41 (6th Cir. 2005).

Concerning his CAT claim, Aleksander asserts in his petition for review that it is more likely than not that he would be persecuted or tortured upon removal. However, he makes no developed argument particular to his CAT claim. He has therefore waived relief on those grounds. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)); *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005) (holding that withholding of removal and CAT claims not developed in brief were waived on appeal).

### C. Spaqi Family Appeal, Case No. 09-4444

We review for abuse of discretion the BIA's denial of a motion to remand. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). *See Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (governing motions to reopen). We also review for abuse of discretion the BIA's determination that the IJ acted within her discretion in denying a motion to sever. *Cf. id.* (reviewing an IJ's denial of a continuance for an abuse of discretion because the grant of the continuance fell within the discretion of the IJ). An abuse of discretion occurs when the denial of a motion "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (internal quotation marks and citation omitted).

The BIA agreed with the IJ's denial of the Spaqi's request to sever because "the [Petitioners] were represented by counsel, their counsel had an opportunity to sever the cases prior to the merits hearing, and the grounds for statutory denial had existed since the inception of the case." A.R., 09-

4444, at 4 (BIA Decision at 3). On appeal, Petitioners argue that "there was no conclusive indication that the IJ would have found Prek statutorily ineligible for asylum and withholding of removal prior to the IJ actually making such a ruling." Pet. Br., 09-4444, at 21. There is a clear statutory basis for the IJ's finding, however, that Prek is statutorily ineligible for asylum based on his conviction for attempted murder, an aggravated felony under the INA. *See* 8 U.S.C. § 1158(b)(2)(A)(ii) (stating that an alien is barred from asylum if he has been convicted of a "particularly serious crime"); *id.* § 1158(b)(2)(B)(i) (stating that "a particularly serious crime" includes an "aggravated felony"); *id.* § 1101(a)(43)(A), (U) (defining "aggravated felony" as including "murder" and attempted murder); *id.* § 1101(a)(43) (aggravated felony includes "such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years"). Furthermore, Petitioners disclosed this conviction on the family's asylum application, suggesting their awareness of its significance. And they do not contest its application on appeal. Accordingly, the IJ provided a rational explanation for denying the motion to sever, which the BIA found to be appropriate, and no abuse of discretion occurred.

The BIA properly styled the motion to remand as one to reopen, which it may deny when "the movant has not established a prima facie case for the underlying substantive relief sought." *INS v. Abudu*, 485 U.S. 94, 104 (1988). The BIA denied the motion to remand because Petitioners failed to satisfy "their heavy burden of demonstrating the result of their case would likely change upon remand." A.R., 09-4444, at 4 (BIA Decision at 3). The BIA concluded that the remaining Spaqi family members did not provide evidence demonstrating past persecution or a well-founded fear of future persecution on account of a protected ground.

-12-

Prima facie evidence is that which "reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007) (internal quotation marks and citation omitted). As the BIA and the IJ found, "the evidence of record simply indicates that [Petitioners] are part of a family that was involved in a blood feud with another private family." A.R., 09-4444, at 4 (BIA Decision at 3). Moreover, an individual applicant for asylum must prove that he or she will be singled out for persecution. *See Akhtar v. Gonzales*, 406 F.3d 399, 405-06 (6th Cir. 2005). "'Although acts of violence against an alien's family members may demonstrate a well-founded fear of persecution, absent a pattern of persecution tied to the asylum applicant, himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution.'" *Id.* (quoting *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th Cir. 2004)). Thus, while relevant, familial status alone cannot support a claim for persecution. *Id.* at 406 (citing *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003)). *Cf. Mapouya v. Gonzales*, 487 F.3d 396, 412 (finding that the applicant provided evidence tending to show that he still faced an individualized threat of future persecution despite changed country conditions). The evidence presented at the 2006 hearing focused primarily on Prek's conflict with the Romojas, and Prek's subsequent departure from Kosovo, and Pepa's efforts at reconciliation. Because this evidence was insufficient to establish a prima facie case of eligibility with respect to Prek in that it demonstrated simply a private dispute, it was likewise insufficient to establish eligibility for the derivative family members.[4] Thus, the BIA did not act abuse its discretion in concluding that the

---

[4]The government argues that the derivative family members cannot establish prima facie eligibility because they never filed their own applications. Because the BIA did not abuse its

derivative beneficiaries had not established a prima facie case of eligibility for asylum or withholding.

Lastly, Petitioners did not challenge the IJ's denial of Prek's application for protection under the CAT in his petition to the BIA. The claim has not been exhausted and is therefore beyond the scope of this court's review. 8 U.S.C. § 1252(d)(1).

## III. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review in Case No. 09-4442. We also **DENY** the petition for review in Case No. 09-4444.

---

discretion in denying the motion to reopen on other grounds, we need not and do not address the procedural requirements for filing a motion to reopen as a derivative beneficiary. *Compare Haddad v. Gonzales*, 437 F.3d 515, 518 n.5 (6th Cir. 2006) (noting that filing a motion to reopen as a derivative "is incompatible with the statute and regulations"), *with Selami v. Gonzales*, 150 F. App'x 504, 506-07 (6th Cir. 2005) (unpublished opinion) (dismissing derivative's petition for review because she had filed no independent asylum application of her own and noting the government's suggestion that she file a motion to reopen accompanied by her own application).

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.**

Because the BIA did not properly review the full record, Aleksander Spaqi has established a due-process violation arising out of the BIA's treatment of his untimely asylum application. On the merits, the BIA erred as a matter of law when it concluded that Aleksander could not show persecution on account of a protected ground as a result of the harm he experienced as a member of the Spaqi family. I therefore would grant Aleksander's petition for review of the BIA's decision in Case No. 09-4442 denying Aleksander's requests for asylum and withholding of removal. Because Aleksander waived challenge to the BIA's denial of his CAT claims, I would, however, deny review of the portion of Aleksander's petition requesting protection under the CAT. I agree with the majority's disposition of Case No. 09-4444.

In Case No. 09-4442, I would remand to the BIA with instructions to consider the one-year finding in light of the full record, and to address in the first instance whether Aleksander has demonstrated past persecution or a well-founded fear of future persecution by persons whom the government of Kosovo is unable or unwilling to control. Because the BIA's analysis of Aleksander's withholding of removal claim turned on its analysis of his asylum claim, the BIA should also determine whether Aleksander meets the withholding-of-removal standard.

The BIA agreed with the IJ's determination that Aleksander was ineligible for asylum based upon his failure to file within the one-year period, and his failure to establish any changed or extraordinary circumstances related to this delay. Aleksander concedes that, in general, asylum applicants must file their applications for asylum within one year after their arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). He argues, however, that he qualifies for an exception for a

-15-

late-filed application because he has demonstrated "the existence of . . . extraordinary circumstances relating to the delay in filing an application within the period specified." *Id.* at § 1158(a)(2)(D).

Pursuant to 8 U.S.C. § 1252(a)(2)(A) and (B), when an asylum application is denied as untimely, this court has jurisdiction to review only "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), and not "discretionary or factual questions," arising out of that determination, *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Aleksander claims that he was denied procedural due process because, when reviewing the IJ's one-year finding, the BIA considered an incomplete Administrative Record. Because this is a constitutional claim, he contends that we may assert jurisdiction.

As an alien, Aleksander is "entitled to the due process of law in deportation proceedings," *Al-Ghorbani v. Holder*, 585 F.3d 980, 992 (6th Cir. 2009), which "requires that an alien be afforded a full and fair hearing," *Gilaj v. Gonzales*, 408 F.3d 275, 290 (6th Cir. 2005). "Due process [also] demands a reasonably accurate and complete transcript to allow for meaningful appellate review and to allow the alien to mount a challenge to the proceedings conducted before the IJ." *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). "To prevail on a due process claim, [Aleksander] must demonstrate that a constitutional error caused actual prejudice; i.e., that the error materially affected the outcome of [his] case." *Al-Ghorbani*, 585 F.3d at 992.

I believe that Aleksander has established a violation of his procedural due-process rights. First, and most importantly for the due-process analysis, it appears that the BIA did not review "a reasonably accurate and complete transcript [that would have] allow[ed] for meaningful appellate review and [for Aleksander] to mount a challenge to the proceedings conducted before the IJ."

*Sterkaj*, 439 F.3d at 279. The IJ found that Aleksander did not provide documentation "to corroborate his inclusion on his father's application, or that his father's application was filed within one year of entry to the United States." Administrative Record ("A.R."), 09-4442, at 90 (IJ Decision at 11). The BIA agreed with the IJ that Aleksander "turned 21-years-old shortly after entry, and failed to produce documentation to meet his burden of demonstrating extraordinary circumstances." *Id.* at 2 (BIA Decision at 1).

To the contrary, the record before the BIA should have included a transcript of the first hearing in Aleksander's case which would have corroborated Aleksander's claim that he had been included in his father's application. Aleksander described this hearing in detail in his appeal to the BIA and noted the particular case number of the asylum application in which he was originally included as a derivative beneficiary. In addition, Aleksander provided to the BIA a copy of his father's I-589, which listed Aleksander as a derivative beneficiary. At the hearing, held before the one-year period expired, the IJ separated out Aleksander's case because he could no longer be included on his father's application. The IJ then deliberately scheduled a hearing to occur before Aleksander's twenty-second birthday, and suggested that he would thereby remain eligible for filing

a separate application for asylum.[1]  The Administrative Record in Aleksander's case, however, did

not include the key transcript.

Instead of considering the referenced materials, the BIA relied on the IJ's findings, which

mischaracterized the proceedings below.  Inexplicably, the same IJ who concluded that Aleksander

did not demonstrate that he was included in his father's timely application had herself separated out

---

[1]An excerpt of that hearing follows:
[Judge for the Record:]  Let the record reflect that the Respondent is present and this
case was part of the father's file, file A 98 490 634, and that . . . Grace, will you make
a copy of that and put it in his file as well. . . . [T]his matter will be separated out at
this point because the Respondent is now 21 years of age.
. . .
[Judge:] Is there a separate Application for him?
[Aleksander's Attorney ("Attorney"):] No, Your Honor.  I miscalculated the age and
I did not prepare a separate Application.
. . .
[Judge:] I assume you're going to consolidate this with the father?
[Attorney:] Yes, Your Honor.
. . .
[setting a hearing date for October 21]
[Judge:] And unfortunately he won't be eligible for Asylum but only eligible
for—well, yes he will be because he's, be 21.
[Attorney:] . . . I can submit the Application prior to the one year anniversary, Your
Honor. . . .
[Judge:] Right, because of his 21st birthday.
[Attorney:]  Right.
[Judge:] . . . October 12, 2005, at 11:00.
[Department of Homeland Security ("DHS"):] That still passes his 21st, his 22nd
birthday.
[Attorney:] I will submit, I will...
[Judge:] When's his 22nd birthday?
[DHS:] He was born October 10, '83, so he turned 21 October 10, of '84, '04, I'm
sorry.
[Judge:] Well, let's make it October 5, then.
Supp. App'x at 2-4.

Aleksander's case and had adjudicated his father's timely application. Furthermore, the BIA's assertion that Aleksander's application was four years late is belied by the record. The IJ found that Aleksander entered the United States on September 4, 2004, and filed his asylum application on October 5, 2005, which is a little over thirteen months after entry. Despite this finding, the IJ erroneously asserted in its decision that Aleksander filed his application almost four years after his arrival. The BIA simply repeated this error.[2]

The BIA's treatment of the one-year issue suggests that the BIA either did not independently review the record, or at most, reviewed an incomplete one. As a result, Aleksander was deprived of his right to have the evidence presented "fairly considered." *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005). We have stated that "[w]hat is required is merely that [the BIA] consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (internal quotation marks omitted); *see Abdulai v. Ashcroft*, 239 F.3d 542, 549-50 (3d Cir. 2001) (suggesting that "the BIA denies due process to an alien when it acts as a mere rubber-stamp") (internal quotation marks omitted). I do not believe the BIA's opinion in this case meets that threshold.

The government counters that Aleksander did not exhaust his due-process challenge before the BIA. "Although an alien's due process challenge generally does not require exhaustion (the BIA

---

[2]The erroneous four-year finding is crucial because the BIA and IJ provided very little analysis of Aleksander's argument that he qualified for an exception to the one-year period, and such a discretionary exception hinges on the reasonableness of the time taken by the applicant to file the petition.

lacks authority to review constitutional challenges), the alien must raise correctable procedural errors to the BIA." *Sterkaj*, 439 F.3d at 279. "[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004); 8 U.S.C. § 1252(d)(1) (providing that federal courts cannot exercise jurisdiction over an appeal from an order of removal if the alien has failed to exhaust all administrative remedies). Aleksander asserted in his brief to the BIA that his separate application should be treated as timely because he was included as a derivative on his father's timely application.[3] Aleksander then described in detail the hearing in which the IJ instructed Aleksander to file a separate petition, and explained that his father's asylum application, which he submitted with his appeal, clearly listed him as a derivative beneficiary. I conclude, therefore, that Aleksander "rais[e]d correctable procedural errors to the BIA" and exhausted those claims relevant to his due process challenge. *Sterkaj*, 439 F.3d at 279.

"To constitute fundamental unfairness . . ., a defect in the removal proceedings must have been such as might have led to denial of justice." *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005) (internal quotation marks omitted). "To prevail on a due process claim," therefore, Aleksander bears the burden of demonstrating "actual prejudice, and that the alleged prejudice materially affected the outcome of his . . . case." *Mapouya v. Gonzales*, 487 F.3d 396, 416 (6th Cir. 2007); *see Vasha v. Gonzales*, 410 F.3d 863, 875 (6th Cir. 2005) (stating that "a constitutional

---

[3]Aleksander incorrectly asserted to the BIA that he had been included on his father's application when he was still a minor. It appears that his father's application was filed after Aleksander had attained age 21. The core of his argument to the BIA, however, was that it was reasonable for him to have relied on the derivative application under the circumstances.

violation results in prejudice if it "potentially [affected] the outcome of the proceedings." (internal quotation marks omitted) (alteration in original)).

First, had his claim been reviewed properly, Aleksander's untimely filing may have been excused on grounds of changed or extraordinary circumstances. The IJ and BIA have discretion to consider an untimely application if the alien demonstrates "the existence of changed . . . or extraordinary circumstances." 8 U.S.C. § 1158(a)(2)(D).[4] Among the non-exhaustive list of "extraordinary circumstances" provided by the governing regulations is the exception that arises when:

> [t]he applicant filed an asylum application prior to the expiration of the 1-year deadline, but that application was rejected by the Service as not properly filed, was returned to the applicant for corrections, and was refiled within a reasonable period thereafter."

8 C.F.R. § 1208.4(a)(5)(v). Aleksander appeared before the IJ, was included on an asylum application filed before the one-year period expired, and filed his own separate application a month later, at a hearing scheduled by the IJ herself. Thus, Aleksander was included on an application filed before the conclusion of the one-year period, and his derivative "application . . . was rejected . . . as not properly filed." *Id.* (emphasis added). In addition, this exception requires that the application "was refiled within a reasonable period" after the first application was rejected. *Id.* It surely appears

---

[4]"Changed circumstances" may include "[i]n the case of an alien who had previously been included as a dependent in another alien's pending asylum application, the loss of the spousal or parent-child relationship to the principal applicant through . . . attainment of age 21." 8 C.F.R. § 1208.4(a)(4)(i)(C). Aleksander had turned 21 before his father's application was filed, but the examples provided by statute are not exhaustive. Aleksander's argument may be analogous to this ground for an exception to the one-year period.

more reasonable that Aleksander filed his application one year and one month rather than four years after his arrival, and roughly six weeks after his derivative application was rejected.

By showing that the Administrative Record lacked a key hearing transcript which contributed to inadequate review of his claims, Aleksander has established "actual prejudice" that "materially affected" his eligibility for asylum. *Mapouya*, 487 F.3d at 416. The BIA, however, alternatively denied his asylum claim on the merits. Whether the violation "materially affected the *outcome* of his . . . case," *id.* (emphasis added), therefore, turns on our review of the BIA's alternative findings. If the outcome of his case would have been different but for the one-year finding, then Aleksander has established prejudice, and the BIA must reconsider its determination in light of the complete record.

Aleksander appeals the BIA's alternative denial of his asylum claim on the merits, as well as the BIA's denial of his claims for withholding of removal and protection under the CAT. To qualify for asylum, Aleksander must show that he is a "refugee" within the meaning of the INA § 101(a)(42), 8 U.S.C. § 1101(a)(42); *see* 8 C.F.R. § 1208.13(a). To establish that he is a refugee, Aleksander must demonstrate that he has suffered past persecution or has a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see id.* at § 1158(b)(1)(B)(i); *Berri v. Gonzales*, 468 F.3d 390, 396 (6th Cir. 2006).

Aleksander claimed to have suffered persecution on account of his membership in particular social group: the Spaqi family. The BIA determined that Aleksander's membership in his own family did not constitute membership in a particular social group and that conflict between the

families did not give rise to harm on account of a protected ground. The BIA did not find that Aleksander failed to show the requisite severity of harm. Rather, the BIA's analysis was limited to nexus—that Aleksander had not shown that any harm to him was on account of a ground specifically protected by the INA (race, religion, nationality, membership in a particular social group, or political opinion).

The BIA erred as a matter of law when it determined that "Spaqi family members embroiled in a blood feud," A.R., 09-4442, at 3 (BIA Decision at 2)—which the IJ characterized as Aleksander's immediate family and close relatives—do not constitute a particular social group. Both Aleksander and Prek identified the particular social group suffering persecution as consisting of Prek Spaqi, his children, and his close relatives. In *Castellano-Chacon v. INS*, 341 F.3d 533 (6th Cir. 2003), this court adopted the BIA's definition of a "particular social group" as composed of individuals who share a "common, immutable characteristic." *Id.* at 546-47. "[A] common, immutable . . . characteristic" includes those qualities that members "either cannot change, or should not be required to change," such as "sex, color, or *kinship ties*." *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)) (emphasis added).

Because family identity may be common, distinctive, and immutable, we observed that a particular social group defined by "membership in the same family[] is widely recognized" in this circuit and others as falling within the INA's protection. *Al-Ghorbani*, 585 F.3d at 995; *see, e.g.*, *Torres v. Mukasey*, 551 F.3d 616, 629 (7th Cir. 2008) ("Our prior opinions make it clear that we consider family to be a cognizable social group within the meaning of the immigration law."); *Jie

*Lin v. Ashcroft*, 377 F.3d 1014, 1029 (9th Cir. 2004) ("Where family membership is a sufficiently strong and discernible bond that it becomes the foreseeable basis for personal persecution, the family qualifies as a 'social group.'"); *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."). Accordingly, under our circuit precedent, a "known family" bound by immutable kinship ties—which is thus particular and socially visible [5]—constitutes a particular social group. *Toma v. Gonzales*, 179 F. App'x 320, 324 (6th Cir. 2006) (internal quotation marks omitted). In accordance with widespread precedent, Aleksander has thus demonstrated membership in a particular social group by virtue of membership in his family.

There is no suggestion, furthermore, that Romoja family members bear a grudge particular to Aleksander—instead, they want to harm him because of his membership in the Spaqi family, which provides the nexus required by statute. *Compare Torres*, 551 F.3d at 630 (vacating BIA's order denying relief because applicant's "testimony is rife with examples that provide his family's history"—namely, the targeting of his older brothers—as the cause of his persecution), *with Demiraj*

---

[5]According to the BIA, the "key characteristics of a particular social group are particularity and social visibility." *Al-Ghorbani*, 585 F.3d at 994 (citing *Matter of S-E-G-*, 24 I. & N. Dec. 579, 582 (BIA 2008)). When holding that the family may satisfy the particularity and social-visibility requirements, we explained that:

> The essence of the particularity requirement . . . is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons. Social visibility, on the other hand, requires that the shared characteristic of the group should generally be recognizable by others in the community. The shared characteristic must be considered in the context of the country of concern and the persecution feared. *Id.* (internal citations and quotation marks omitted). There is no suggestion that the Spaqi family is not distinct and recognizable in their community.

*v. Holder*, 631 F.3d 194, 199 (5th Cir. 2011) (concluding that "[t]he record here discloses a quintessentially personal motivation" for vengeance, and not one based on family membership). Thus, the BIA erred when it concluded that conflict between the families did not constitute harm on account of a protected ground.

Because the stated basis for denying asylum relief on the merits was improper, Aleksander has shown that the due-process violation may have "materially affected the outcome of his . . . case." *Mapouya*, 487 F.3d at 416. Consequently, on remand, the BIA should review the IJ's one-year finding in light of the full record. *See Ahmed*, 398 F.3d at 728 ("The proper remedy for this due process violation is to give [petitioners] an opportunity to have their case heard fairly.").

To prevail ultimately on his asylum claim, Aleksander must show past harm or well-founded fear of future harm that rises to the level of "persecution," and that the persecution is "by the government or persons [the] government is unwilling or unable to control." *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011) (internal quotation marks omitted); *see Gilaj*, 408 F.3d at 283-85. The BIA did not specifically address whether the severity of the alleged harm rose to the level of persecution or whether the government of Kosovo is unable or unwilling to protect him from the harm. "When the BIA does not fully consider an issue," as a "reviewing court" we are "'not generally empowered to conduct a de novo inquiry into the matter being reviewed.'" *Bi Xia Qu*, 618 F.3d at 609 (quoting *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006)). Because the BIA did not fully consider whether Aleksander is eligible for asylum, we must "remand to the [BIA] for additional investigation or explanation." *Thomas*, 547 U.S. at 186 (internal quotation marks omitted). Accordingly, I would remand to the BIA for consideration of whether Aleksander has established

past persecution or well-founded fear of future persecution from which the government of Kosovo is unable or unwilling to protect him. In addition, the BIA's dismissal of Aleksander's withholding of removal claim was based on its analysis of his asylum claim. Therefore, the BIA must also consider on remand whether Aleksander has established "that there is a clear probability that he will be subject to persecution if forced to return to" Kosovo, such that he is entitled to withholding of removal. *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).

Because the BIA did not properly review the full record, Aleksander has established a due-process violation arising out of the BIA's treatment of his untimely asylum application. On the merits, the BIA erred as a matter of law when it concluded that Aleksander could not show persecution on account of a protected ground as a result of the harm he experienced as a member of the Spaqi family. I therefore would grant Aleksander's petition for review of the BIA's decision in Case No. 09-4442 denying Aleksander's requests for asylum and withholding of removal. I would remand to the BIA with instructions to consider the one-year finding in light of the full record, and to address in the first instance whether Aleksander has demonstrated past persecution or a well-founded fear of future persecution by persons whom the government of Kosovo is unable or unwilling to control. Because the BIA's analysis of Aleksander's withholding of removal claim turned on its analysis of his asylum claim, the BIA in my view must also determine whether Aleksander meets the withholding-of-removal standard.

For the reasons explained above, I respectfully dissent in Case No. 09-4442.