**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0179n.06
Filed: March 5, 2009

No. 08-3662

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| FATJON STERKAJ and ANEMONA SOKOLI-STERKAJ, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS |
| ERIC H. HOLDER, JR., | ) ) | |
| Respondent. | ) ) | |

Before: RYAN, GIBBONS, and SUTTON, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Fatjon Sterkaj ("Sterkaj") and his wife Anemona Sokoli-Sterkaj ("Sokoli-Sterkaj") petition for review of the decision of the Board of Immigration Appeals ("BIA") denying their motion to reopen in order to permit Sterkaj to reapply for withholding of removal and protection under the regulations implementing the Convention Against Torture ("CAT"). The Sterkajs allege that they face torture and persecution because of their support of Albania's Democratic Party should they be forced to return to Albania. We find that the BIA did not abuse its discretion in denying the Sterkajs' motion to reopen and therefore deny the petition for review.

1

**I.**

The Sterkajs are citizens of Albania who fled in September 1998 and entered the United States without valid documentation. The Immigration and Naturalization Service sought to remove the Sterkajs upon two grounds: that they attempted to gain admission by fraud or willful misrepresentation of a material fact and that they did not have valid entry documents. *See* 8 U.S.C. § 1182(a)(6)(C)(i) and § 1182(a)(7)(A)(i)(I). The Sterkajs admitted to entering the United States without valid documentation but denied willfully misrepresenting any material facts. They also applied for asylum and withholding of removal on the grounds that Sterkaj had suffered persecution because of his political activities in Albania and feared additional persecution should he return to Albania.

Specifically, Sterkaj alleged that he was associated with, but not a member of, Albania's Democratic Party (the "DP") and attended a rally for the DP in February 1998 in the capital city of Tirana. During that rally, "special forces" assaulted DP supporters and arrested attendees including Sterkaj. Sterkaj further alleges that after the Albanian authorities took him into custody, they held him for three days and repeatedly beat him. Upon his release, Sterkaj claims to have sought treatment at a local hospital.

One month later, on March 22, Sterkaj claims that special forces broke down the door to his parents' home while searching for him. During the search, Albanian police hit Sterkaj's father with

a gun butt. Sterkaj fled to his uncle's home by car, attempting to take back roads to avoid Albanian authorities. However, according to Sterkaj, the Albanian police found and pursued him in an automobile chase that resulted in a bullet grazing Sterkaj's head. Sterkaj was able to abandon his car, flee through the woods to his uncle's home, and then leave Albania for the United States.

The Immigration Judge ("IJ") conducted a hearing on February 28, 2000, to determine the merits of the Sterkajs' asylum application. As a part of this hearing, the IJ examined two documents the Sterkajs had submitted to corroborate their stories of suffering political persecution in Albania. The first document was a hospital record purporting to show that Sterkaj sought emergency medical treatment in February 1998 around the time of the DP rally. The second document was ostensibly from the District Prosecutor of Shkodra, Albania declaring that Sterkaj was wanted for organizing an unlawful political rally. The IJ twice adjourned the hearing to allow the United States Embassy in Albania to attempt to verify the documents. The embassy determined that while the hospitalization record was authentic, the prosecutor's summons was a forgery. Forensic document analysis revealed that the stamp on the supposed summons was hand drawn. Following this determination, the IJ made an adverse credibility finding as to the Sterkajs' testimony, denied their application for asylum, and held that their application was frivolous. The IJ entered his order on April 11, 2003. The BIA affirmed the IJ's decision on September 17, 2004; and we denied a petition for review in a published opinion, specifically affirming the IJ's adverse credibility and frivolousness findings. *See Sterkaj v. Gonzales*, 439 F.3d 273, 278-79 (6th Cir. 2006).

On February 21, 2008, the Sterkajs filed a motion to reopen the proceedings, alleging that changed country conditions in Albania and the CAT required removal to be withheld. The Department of Homeland Security, filed a response in opposition. The BIA concluded that the motion was only valid for Sterkaj, as his wife Sokoli-Sterkaj had self-deported, requiring the BIA to dismiss Sokoli-Sterkaj's motion as withdrawn. *See* 8 C.F.R. § 1003.2(d) ("Any departure from the United States . . . after the filing of a motion to reopen . . . shall constitute a withdrawal of such motion."). Turning to Sterkaj's motion, the BIA held that Sterkaj had failed to allege a change in country conditions sufficient to find that he would face either political persecution or torture. At most, Sterkaj had proven that he would face incarceration because of a prior conviction for armed robbery;[1] and Sterkaj had failed to present any evidence that his co-conspirators had suffered torture or other physical abuse while incarcerated for the same crime. Consequently, the BIA denied Sterkaj's motion. Sterkaj and Sokoli-Sterkaj timely petitioned for review.

## II.

### A.

Initially, we note that while this petition is styled in the name of both Sterkaj and his wife, the petitioners' brief contains no argument concerning the BIA's dismissal of Sokoli-Sterkaj's

---

[1]While the BIA refers to Sterkaj's Albanian conviction as "armed robbery," we note that the facts of the incident as found by the Albanian courts – the forced taking of a vehicle at gunpoint while the rightful occupant was present inside – might better be described as carjacking. *Cf.* 18 U.S.C. § 2119 (defining carjacking as "tak[ing] a motor vehicle . . . from the person or presence of another by force and violence or by intimidation").

asylum application as withdrawn because she self-deported. Nor do the petitioners contest the BIA's factual finding that Sokoli-Sterkaj in fact did self-deport. "It is well established that an issue not raised in a party's briefs on appeal may be deemed waived." *Farm Labor Org. Comm. v. Ohio State Hwy. Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) (citation omitted). Because the petitioners' brief fails to assert any issues as to the BIA's resolution of Sokoli-Sterkaj's application, we find that she has waived her right to contest before us the BIA's determination that her application was withdrawn.

**B.**

Our holding that Sokoli-Sterkaj has waived her ability to contest the BIA's adverse determination as to her application does not affect our review of the denial of her husband's motion to reopen. We now move to consider his two arguments on appeal. Sterkaj first contends that the district court erred in denying his motion to reopen and withhold removal because conditions in Albania have changed from the time of his original asylum application. "[W]e review the BIA's denial of a motion to reopen for an abuse of discretion." *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). We cannot find that the BIA abused its discretion unless its denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 699 F.2d 1157, 1161 (6th Cir. 1982)). To the extent that the BIA's denial rests upon factual determinations, the BIA's

determinations "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B).

Under the Immigration and Nationality Act, an alien generally must file a motion to reopen within ninety days of the entry of the "final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). It is undisputed that Sterkaj filed his motion years after this deadline had expired. Therefore, in order for Sterkaj's petition to be timely, he must satisfy the more stringent requirements established by the next subsection. Sterkaj must demonstrate that his motion "is based on changed country conditions arising in the country of nationality . . . if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii). Sterkaj's burden under this standard is a heavy one because "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *INS v. Jong Ha Wang*, 450 U.S. 139, 143 n.5 (1981) (internal quotation omitted). *See also INS v. Doherty*, 502 U.S. 314, 323 (1992) (noting that motions for reopening of immigration proceedings are disfavored). However, if Sterkaj can demonstrate that his "life or freedom would be threatened . . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion," withholding of removal is mandatory. 8 U.S.C. § 1231(b)(3)(A). To trigger this mandatory withholding, Sterkaj must demonstrate that it is "more likely than not that [he] would be subject to persecution." *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006) (quoting *INS v. Stevic*, 467 U.S. 407, 423 (1984)).

Sterkaj bases his motion to reopen upon what he contends are two pieces of newly discovered evidence: his conviction by an Albanian court for armed robbery and information on prison conditions in Albania found within the State Department's 2006 Country Report. We will examine each contention in turn. Sterkaj alleges that it was both unknown and unknowable to him that an Albanian court had convicted him of armed robbery for stealing a green Mercedes Benz 250 outside a sports stadium in Tirana on September 10, 1998. However, at the original hearing on his asylum application, the government's counsel asked Sterkaj the following question:

> Sir, going back to your interview on October 14th of 1998 at your credible fear interview, there was a question asked of you, and the question was, when you entered the U.S. and was [sic] stopped at the airport, you told the immigration officer that you were unemployed, living with your family *and had been wounded in a robbery along with several others*. You stated that you were fleeing Albania for mostly economic and social reasons. Now you are saying something totally different. Why the difference?

After initially denying the government counsel's summary, Sterkaj finally admitted that the government's account was correct as to the content of his initial statements to immigration officers. We additionally note that while Sterkaj spends much time in his brief objecting to his trial in absentia, the record makes clear that he was represented by counsel at his trial even if he was not there.

The BIA did not abuse its discretion in denying Sterkaj relief in regard to this evidence. The close proximity of the dates involved suggests that Sterkaj knew he was sought by the authorities. Sterkaj fled Albania on September 12, 2008, two days after the September 10 robbery. His initial statements to INS officials indicate that he knew Albanian authorities wanted him for questioning,

as Sterkaj admitted he "had been wounded in a robbery along with several others." Although Sterkaj's story later changed, we cannot find that the BIA abused its discretion in concluding that this evidence was previously discoverable and did not relate to oppression because of Sterkaj's "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

The importance of the evidence of Sterkaj's conviction relates to the fact that Sterkaj likely faces a lengthy prison sentence if returned to Albania.[2] Sterkaj points to the 2006 State Department Country Report for Albania, which states that "conditions inside the prisons and detention centers remained poor and were marked by decrepit conditions, overcrowding, poor food quality, physical abuse of detainees, and a lack of medical care," to support his contention that he will face persecution if he is deported. The report also notes that the Albanian government is aware of and addressing these problems, as it has dismissed 178 guards and officials for corruption or misconduct and allows international observers to visit all of its prison facilities.

Our prior precedents require that an alien "cannot rely on speculative conclusions or mere assertions of fear of possible persecutions" but must instead demonstrate that there is a real threat of persecution with regard to the individual alien seeking withholding. *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (citation omitted). *See also Zhang v. Mukasey*, 543 F.3d 851, 854-55 (6th Cir. 2008). Although there is general evidence of poor prison conditions, Sterkaj has not pointed

---

[2]On appeal, the Albanian Supreme Court reduced Sterkaj's sentence from ten to seven years incarceration.

to any evidence, either before the BIA or this court, that he faces an individualized threat of persecution. Albanian court records reveal that Sterkaj was one of four people convicted in the armed robbery plot, but Sterkaj has not produced any evidence suggesting that any of his co-conspirators were abused or otherwise harmed while in prison. Additionally, as the BIA noted, Sterkaj does not argue how conditions have changed in Albania since the time of his original application. The language of the statute would appear to require that a successful applicant must at the very least compare and contrast some elements of the country's conditions at the time of his application with the present. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii) (noting that the conditions must have "changed"). Sterkaj makes no effort to demonstrate how the political and human rights situation in Albania has changed for the worse from 1998 to today. Indeed, we note that the same 2006 State Department report cited by Sterkaj also states that the rights of freedom of speech, freedom of assembly, and freedom of association are "generally respected" in Albania.

We have already affirmed the BIA's prior adverse credibility determination. *Sterkaj*, 439 F.3d at 278. Sterkaj does not point to any new facts that would lead us to second-guess our prior credibility determination. We have held in a recent case that where an applicant has given us no reason to doubt the BIA's conclusion that the prior application was frivolous, we cannot find that the BIA abused its discretion in declining to credit new evidence presented in a motion to reopen. *Zhang*, 543 F.3d at 855. Because Sterkaj has presented no evidence that he faces an "individualized risk of persecution" should he return to Albania, we find that Sterkaj did not prove that it is more likely than not that he will face persecution and that consequently the BIA did not abuse its discretion in denying the motion to reopen on the basis of changed country conditions. *Id.*

9

**C.**

Sterkaj's final argument is that the BIA should have granted him relief under the provisions

of the CAT. An individual who seeks relief under the CAT must prove "that it is more likely than

not that he or she would be tortured if removed to the proposed country of removal. The testimony

of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."

8 C.F.R. § 208.16(c)(2). The regulations define torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). When considering whether to grant relief under the CAT, we "consider the

possibility of future torture, including any evidence of past torture inflicted upon the applicant and

evidence that the applicant is not likely to be tortured in another area of the country of removal."

*Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001). *See also* 8 C.F.R. § 208.16(c)(3).

Sterkaj bases his CAT claim on the same grounds as that he alleged to support his claim for

withholding of removal. Sterkaj merely states in a conclusory fashion that he "will be persecuted

and tortured in prison." (Pet. Br. at 18.) Just as we did not find that the evidence Sterkaj presents

compels a conclusion that persecution is more likely than not, we likewise find that the same

evidence does not prove that torture is more likely to occur than not. *Cf. Berri*, 468 F.3d at 398. Therefore, we hold that BIA did not abuse its discretion in denying Sterkaj relief under the CAT.

**III.**

For the foregoing reasons, we deny the Sterkajs' petition for review and hold that the BIA did not abuse its discretion in denying the Sterkajs' motion seeking withholding of removal and relief under the CAT.