**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0460n.06

Case No. 17-3015

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 08, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FENG JIN LIN, | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, | ) | BOARD OF IMMIGRATION |
| U.S. Attorney General, | ) | APPEALS |
| | ) | |
|     Respondent-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before:  SILER, SUTTON, and WHITE, Circuit Judges.

**SILER**, Circuit Judge.  Feng Jin Lin petitions for review of the Board of Immigration Appeals ("BIA") order denying her untimely motion to reopen[1] and remand proceedings on grounds of asylum, withholding, and protection under the Convention Against Torture ("CAT"). *See* 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. § 1208.16.   Lin argues that reopening the proceedings is proper because of changed circumstances involving China's persecution of Christians and enforcement of certain family-planning policies.  Lin requests that we reopen her case or, in the alternative, remand to enable the government to afford discretionary relief.  We deny the petition for review because the BIA did not abuse its discretion in determining that Lin failed to substantiate changed conditions impacting her asserted grounds for relief.

---

[1] No party disputes that Lin filed the motion outside the filing deadline for motions to reopen.  *See* 8 C.F.R. § 1003.2(c)(3)(ii).

**FACTUAL AND PROCEDURAL BACKGROUND**

Lin, a citizen of China, entered the United States in 2004. She represents that fear of persecution for objecting to and violating certain Chinese policies motivated her entry. Lin resisted undergoing the insertion of an intrauterine device ("IUD") or enduring sterilization, both of which would have prevented pregnancy consistent with China's family-planning policy. She has since given birth to four children, and she asserts that she will face fines and sterilization upon return to China with her children. Lin has also converted to Christianity, in 2013, thereby rendering her vulnerable to persecution based on her religion. She asserts that new evidence shows China's practices and patterns of arresting, detaining, and physically abusing Christians will hinder the practice of her faith. The evidence, says Lin, creates a reasonable likelihood that she will be persecuted for her beliefs.

In 2009, Lin applied for asylum, withholding of removal, and protection under the CAT, claiming fear of persecution for her status as a Christian and violator of China's family-planning policies. In 2010, an Immigration Judge ("IJ") ordered removal to China, finding Lin ineligible for relief because she was unable to demonstrate past persecution or a well-founded fear of future persecution. Lin appealed the decision, and the BIA dismissed Lin's appeal in 2012.

In 2016, after the expiration of the deadline to file a motion to reopen, Lin moved to reopen and remand proceedings, asserting renewed vulnerability to persecution because of her four children and conversion to Christianity. The BIA determined that Lin did not establish changed country conditions and that Lin had failed to establish a prima facie case for relief.

## STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for an abuse of discretion. *See Kucana v. Holder*, 558 U.S. 223, 242 (2010); *Allabani v. Gonzalez*, 402 F.3d 668, 675 (6th Cir. 2005).

## DISCUSSION

### I. Did the BIA abuse its discretion in denying Lin's motion to reopen and remand proceedings?

### Legal Standard

Upon final decision, an applicant for relief from removal may seek to reopen and remand the case. *See Kukalo v. Holder*, 744 F.3d 395, 399 (6th Cir. 2011). A motion to reopen proceedings "shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." *See* 8 C.F.R. § 1003.2(c)(1). A motion to reopen will not be granted unless "the evidence sought to be offered is material, was not available, and could not have been discovered or presented at the time of the original hearing." *INS v. Abudu*, 485 U.S. 94, 97–98 (1988).

An asylum applicant generally may only file one motion to reopen her case, and it must be effected within 90 days after the date of the final administrative decision that was rendered in the proceeding sought to be reopened. 8 C.F.R. § 1003.2(c)(2). But this does not apply to a motion to reopen that is "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii); *see also Bi Feng Liu v. Holder*, 560 F.3d 485, 490 (6th Cir. 2009). When seeking to reopen a case on the basis of changed country conditions, the movant must prove both that (1) country conditions changed between the completion of her immigration proceedings and the filing of her motion to reopen, and (2) the change would have affected her eligibility for

asylum. *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004); *Sterkaj v. Mukasey*, 315 F. App'x 586, 590 (6th Cir. 2009). Satisfaction of the second prong necessarily depends on establishing a prima facie case for the relief sought (here, asylum, CAT protection, withholding of removal). *See Zhen Zhu Weng v. Sessions*, No. 16-3228, 2017 U.S. App. LEXIS 6001, at \*6–7 (6th Cir. Apr. 5, 2017).

The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who qualifies as a "refugee." *See* 8 U.S.C. § 1158(b). A refugee is an alien unwilling or unable to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The alien bears the burden of establishing that she is a refugee who has suffered past persecution or has a well-founded fear of future persecution. *See Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003); 8 C.F.R. § 1208.13(a). To prove a well-founded fear of future persecution, the alien must show (1) "[s]he genuinely (subjectively) fears [s]he will be persecuted based on a protected ground if returned to h[er] native country;" and (2) "h[er] fears are objectively reasonable." *Elias v. Gonzalez*, 490 F.3d 444, 449 (6th Cir 2007).

An alien qualifies for CAT protection by demonstrating that it is "more likely than not he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see also Ramaj v. Gonzalez*, 466 F.3d 520, 532 (6th Cir. 2006). The torture must be "instigated by, or done with the consent or acquiescence of a government official or someone acting in official capacity." *Hamida v. Gonzalez*, 478 F.3d 734, 741–42 (6th Cir. 2007).

An alien qualifies for withholding of removal by demonstrating that it is more likely than not that "life or freedom would be threatened" upon removal on the basis of a protected ground. 8 U.S.C. § 1231(b)(3)(A); *INS v. Stevic*, 467 U.S. 407, 429–30 (1984). This standard is more

stringent than that governing eligibility for asylum. *Berri v. Gonzalez*, 468 F.3d 390, 397 (6th Cir. 2005).

### Reopening on the Basis of Religious Beliefs

Lin argues that she has demonstrated changed country conditions for unregistered Christians in China, along with valid prima facie evidence for relief, entitling her to have her motion reopened by the BIA. 8 C.F.R. § 1003.2(c)(3)(ii). The BIA held that "government interference in unregistered churches and harassment of some underground church members by the Chinese government has been a 'longstanding concern,' including at the time of the 2010 hearing." Lin does not deny the mistreatment occurred in 2010, as it does in 2016; instead she argues the steady increase of the worsening treatment of unregistered Christians in China would lead to her persecution. Lin presents 2014 and 2015 Annual Reports from the U.S. Commission on International Religious Freedom ("USCIRF") as evidence for the changes in treatment to Christians from her previous hearing in 2010. The 2015 report refers to "unprecedented violations" against Catholics and Protestants, identifying China as a "country of particular concern." As another indication of changed violence since 2010, Lin asserts the tactics of punishing unregistered religious groups has also worsened. Beginning in 2012, the State Department has reported that unregistered Christians have been committed to psychiatric hospitals based on their religious affiliations, a key change from 2010.

Lin maintains that she presented prima facie eligibility for relief warranting reopening of proceedings by showing a pattern or practice of persecution of unregistered Christians throughout China and proof that she will be individually persecuted for her religious beliefs. She argues that the evidence submitted from the United States Commission on International Religious Freedom (USCIRF), the U.S. State Department, and China Aid confirm that the

Chinese government actively harasses, detains, fines, mistreats, and imprisons members and leaders of unregistered Christian groups in a systematic matter, thus forcing Christians to practice their religion underground to avoid punishment, a restriction which itself is a form of persecution. *See Muhur v. Ashcroft*, 355 F.3d 958, 960–61 (7th Cir. 2004) (granting review based on public documentation of religious persecution). She asserts the evidence submitted demonstrates that she will be individually targeted based on China's documented mistreatment of underground Christians. In China, Lin explains, public proselytization is banned, with officials aggressively pursuing evangelicals and closely monitoring religious material. Lin argues that as a Baptist, a religious sect she asserts requires proselytizing, her chances of being arrested and persecuted for religious activity are significantly increased and she thus established a well-founded fear of future persecution.

The BIA did not abuse its discretion in denying relief. "[A]n alien filing a motion to reopen based on changed country conditions cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of *individual* persecution." *Kalaj v. Mukasey*, 276 F. App'x 465, 467 (6th Cir. 2008) (internal quotations and citations omitted). To succeed on a pattern or practice claim, the petitioner must show that there is a pattern or practice of persecution of persons similarly situated to her and it is more likely than not that her freedom or life will be threatened upon her return. *See Creado v. Holder*, 587 F. App'x 872, 877 (6th Cir. 2014).

Although the BIA agreed that the reports Lin submitted have merit, it did not err in finding persuasive several other documents showing that the Chinese government has engaged in a longstanding policy of oppressive enforcement of religious restrictions starting well before Lin's 2010 immigration proceedings. In 2007, the Refugee Review Tribunal of Australia

reported "a crackdown on house churches and Catholics," in the Fujian province, where Lin is from. This same type of information was listed in the China AID report in 2009 and 2010. The BIA also reasonably found Lin failed to establish that her evidence addressed conditions of similarly situated persons. *See Koita v. Holder*, 389 F. App'x 491, 493 (6th Cir. 2010) ("Nor was there evidence that the coup resulted in the targeting of individuals similarly situated to petitioner."). Lin also misreads the record by claiming that the 2009 Department of State country report does not mention destruction of churches or religiously-based detention centers. The report specifically cites incidences of demolitions of church buildings and detention of church leaders. Lin's arguments and evidence of changed country conditions, as the BIA determined, are merely speculative.

The BIA also did not err in concluding the record is devoid of evidence that Lin is entitled to relief. Lin's evidence of China's pattern or practice of persecution against Christians—and her fear of individual persecution—does not demonstrate a "reasonable likelihood" persecution will occur upon Lin's return to China. Her argument is contradicted by the 2015 Department of State report, which indicates that China officially recognizes freedom of religion, that Christianity is a government-sanctioned religion practiced by 68 million people, and that Lin's particular denomination, Baptist, is the largest denomination of Christianity in China. The evidence does not present a "systematic" policy discrimination against Christians. While Lin's evidence supports that some foreigners are banned from proselytization and there are "some restrictions" by groups, the report also indicates that some types of proselytization are permitted. Lin's argument regarding individual persecution fails because she did not offer "reasonably specific information showing a real threat of individual persecution." *Zhang v. Mukasey*, 543 F.3d 851, 855 (6th Cir. 2008).

**Reopening on the Basis of China's Family-Planning Policy**

Lin also argues that she would be persecuted through China's family-planning policy because country conditions have changed since her original suit for relief to which she is entitled. Lin explains that the BIA failed to meaningfully consider the Congressional-Executive Commission on China reports she submitted. The BIA only recognized, says Lin, that the Chinese government had eased population control standards since 2013—neglecting the crux of her argument that the family-planning policy has taken a materially more coercive direction. According to Lin, the report indicated that forced sterilizations and abortions are now commonplace in the Fuijian Province because of population control campaigns under the target management responsibility system.

Lin asserts that the prima facie evidence documented her well-founded fear of persecution. Lin provided government documents from her home province, which describe the local policy of sterilization once the family-planning policy is violated. Lin also produced information from the provincial government website, which provide sterilization is required after having two children, even if they are foreign born. Relying on this evidence, Lin argues that these documents prove her well-founded fear of future persecution because of her choice to have four children.

Again, the BIA did not abuse its discretion in denying relief. As we have previously indicated, continued sporadic use of coercive policies, however unfortunate, does not constitute a material change illustrative of the BIA's abusing its discretion. *See Bi Feng Liu v. Holder*, 560 F.3d 485, 492 (6th Cir. 2009). The evidence Lin presented does not establish changed policies; instead it shows a continuation of family-planning policies in China that do sometimes involve coercive measures. Lin also fails to present evidence of a real and specific harm rising to the

level of persecution in her home province, precluding eligibility for relief. That the record suggests at least two of her children presently reside in China—and are by all accounts safe and well—further undermines Lin's contention that removal will result in persecution.

As to Lin's argument that she faced a realistic threat of persecution based on her children born in the United States, we have already upheld the BIA's findings that children born outside of China are not counted for purposes of China's population-control policies. *See Huang v. Mukasey*, 523 F.3d 640, 653 (6th Cir. 2008) (citations omitted). The record in Lin's case imitates that of *Huang*: there is insufficient evidence that those who give birth to children in the United States are sterilized. The evidence further shows that enforcement of the family-planning policy, including sterilization, varies among different localities.

To the extent Lin alleges the possibility of suffering economic persecution through fines, we previously concluded that "economic deprivation constitutes persecution only when the resulting conditions are sufficiently severe." *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 n.9 (6th Cir. 2007). Lin failed to proffer any evidence of her economic circumstances that would lead the BIA to believe the fine imposed by the Chinese government would result in a deprivation of the "essentials of life."

## II. If no abuse of discretion exists, should the court issue alternative relief by either recommending prosecutorial discretion or remanding without vacatur pending the government's decision on removal?

Lin argues that even if the court does not grant her motion to reopen and remand this case for reconsideration to the BIA, we should recommend prosecutorial discretion or, in the alternative, remand without vacatur pending the government's decision on removal. In *Bbale*, the First Circuit denied a petition for review, but commented that "we think it appropriate to note that this appears to be a case in which the exercise of prosecutorial discretion may be appropriate

under the DHS's detention and removal priorities." *See Bbale v. Lynch*, 840 F.3d 63, 68 (1st Cir. 2016). The Second Circuit issued a conditional mandate to the district court for consideration of certain issues in the first instance, enabling "automatic restoration of appellate jurisdiction" upon satisfaction of certain conditions. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

We decline Lin's request. We have never cited those cases for the propositions advanced by Lin, and she fails to present a compelling reason to depart from the prevailing practices of every other immigration case in this court. As previously noted, "whether to exercise prosecutorial discretion is an issue for the government to decide," the exercise of which denying a petition for review does not prevent or obviate. *Kimethu v. Lynch*, 634 F. App'x 583, 585 (6th Cir. 2016).

Petition for review is **DENIED**.